COURT OF APPEALS OF VIRGINIA


Present: Judges Frank, Humphreys and Senior Judge Bumgardner[*]
Argued at Salem, Virginia


GREGORY LEON YOUNG
                                                    OPINION BY
v.      Record No. 1763-04-3         JUDGE ROBERT P. FRANK
                                                    FEBRUARY 7, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Seth I. Howard, Assistant Appellate Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Denise C. Anderson, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


A jury convicted Gregory Leon Young, appellant, of armed robbery in violation of Code

§ 18.2-58 and sentenced him to life in prison. On appeal, appellant contends that the trial court

erred in allowing the Commonwealth to play portions of a videotaped confession to the jury

because it contained statements of other, unrelated crimes that were inadmissible and highly

prejudicial. For the reasons stated, we affirm appellant's conviction, but vacate appellant's life

sentence and remand to the trial court for re-sentencing.

BACKGROUND

On January 21, 2004, at 3:00 p.m., a man entered the Check 'n Go check-cashing facility

in Danville, Virginia. Shanna Jones, an employee, was alone in the store, standing behind the

counter. The man approached Jones and placed a small note on the counter that read, "I have a

─────────────
[*] Judge Bumgardner participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2005.

gun. Give me $2,100.00. You have ten seconds." The man told Jones, "Just give me all your money and you won't be hurt." He then pulled from his coat a large silver and black handgun. The man pointed the gun at Jones, and she handed over all of the money in her cash drawer, totaling $1,176. The man left the store. Jones pressed the panic button at her station to alert police, who responded to the scene. A video camera in the store recorded the robbery.

On January 28, 2004, police officers arrested appellant in Henry County, Virginia, in connection with a bank robbery that occurred that same day. During their interrogation of appellant regarding that offense, appellant made statements regarding the robbery of the Check 'n Go in Danville. After being questioned by Henry County detectives regarding the Danville robbery, Danville detectives questioned appellant and took a written statement from him. Appellant was subsequently charged with armed robbery and use of a firearm in commission of a felony. These charges were tried separately, with the armed robbery tried by a jury.[1]

Before trial began, outside of the presence of the jury, the Commonwealth advised the trial court that they would seek to admit a video recording of appellant's confession to Henry County and Danville detectives. The tape contained two different interviews, one conducted by Henry County/Martinsville detectives, and one conducted by Danville detectives. The total interview lasted approximately four hours and addressed not only the subject charges, but other, unrelated crimes involving both robbery and drugs, including the Henry County bank robbery for which appellant was initially arrested. Appellant made incriminating statements regarding the present armed robbery during both interviews.

The Commonwealth acknowledged that in the tape "they discuss other things too . . . other cases. And I guess what we need to do is try to sanitize it." Appellant objected to the

_____

[1] The record reflects that, the morning of the trial, appellant chose to proceed *pro se* on the charge of armed robbery, but had appointed counsel to represent him on the other charge. The charge of use of a firearm in commission of a felony is not before us on appeal.

introduction of the video altogether, arguing that it would jeopardize his presumption of innocence before the jury. The trial court allowed the video into evidence, but limited its use to statements about the present offenses, ruling that evidence of any other crimes was not relevant to the present charges. The trial court advised the Commonwealth that "statements unrelated to these offenses need to be redacted from the tape before it is played to the jury." The Commonwealth agreed and informed the court that he would instruct the detectives to do so.

After a brief recess and before trial began, appellant renewed his objection to the admission of the videotape and expressed his concern that the recording could not be sanitized in order to exclude the statements of other crimes. The Commonwealth's Attorney advised the court that detectives were currently reviewing the video and that he would notify appellant as to the outcome of that process before he sought to introduce the video. The trial court agreed and proceeded with opening statements.

During his opening statement, appellant asserted that he was "tricked and forced" into confessing the Check 'n Go robbery to the detectives. Appellant stated that at the time of his confession he was being "held and detained in Henry County on separate charges." Appellant also noted that a search of his house did not result in the recovery of any weapon or cash associated with the armed robbery.

At trial, the victim identified appellant as the robber, who was depicted in the store video recording of the crime. The Commonwealth introduced the fingerprint analysis from the note the robber left on the counter, which matched appellant's fingerprints. The Commonwealth also entered appellant's signed, written confession into evidence, which included a description of the clothing appellant wore on the day of the robbery.

In his cross-examination of the laboratory technician who performed the fingerprint analysis, appellant elicited testimony that his fingerprints had initially been taken for another

criminal case. In his cross-examination of detectives who had interviewed him on the day of his arrest, appellant suggested that he had been intoxicated at the time he made incriminating statements, though these witnesses denied noticing any evidence of intoxication.

The Commonwealth represented that the tape had been "sanitized" and proceeded to play portions of the tape for the trial court's review. The tape had not been sanitized, but the Commonwealth indicated that it would try to "start" and "stop" the tape at specific points in order to allow the jury to view only the statements made regarding the present offense. The Commonwealth and the trial court both noted that the videotape did not have a "counter" that would facilitate this method of showing the tape.

During the "Martinsville" portion of the videotape played for the trial court's review, appellant made reference to other robberies and said that he had purchased drugs with the money he recovered from the present robbery:

> INTERVIEWER: Did you go there planning to rob that too, or did you . . . did you have it spur of the moment or was it planned?
>
> APPELLANT: No . . . that one wasn't spur of the moment.
>
> INTERVIEWER: You drive the same car?
>
> APPELLANT: Yeah.
>
>    \*  \*  \*  \*  \*  \*  \*
>
> INTERVIEWER: [W]hat did you do with that money . . . eleven hundred dollars?
>
>    \*  \*  \*  \*  \*  \*  \*
>
> APPELLANT: And the rest, man, you know, bought me a little bit of drugs, you know . . . little bit of crack . . . little bit of heroin. . . .

Appellant objected to the statements regarding his purchase of drugs. The trial court overruled appellant's objections, finding that his use of the proceeds of the crime was admissible

evidence. The trial court determined that appellant had "opened the door" by asserting in his opening statement that police had searched his home and had not found any proceeds of the crime. The trial court ruled that the Commonwealth could play the "Martinsville" portion of the tape to the jury.

In considering the "Danville" portion of the videotape, the trial court declined to review the video, noting a concern about making the jury wait for the four hours it would take for such a review. The Commonwealth's Attorney represented that "I'm pretty sure that they didn't go into anything else" regarding other crimes, though he conceded that he could not be "a hundred percent sure." The trial court decided, "[w]ell, on the Danville tape, if there is any mention of anything other than the Danville Check 'n Go situation, I'm going to ask that the tape be immediately stopped, and if necessary I will ask the jury to disregard what they just saw."[2]

The Commonwealth resumed its case, calling the Henry County detective who had interviewed appellant. During his testimony, the Commonwealth played the "Martinsville" portion of the videotape to the jury, which included the statements noted above.

The Commonwealth then played the "Danville" portion of the videotape, which included the following statements by appellant:

> INTERVIEWER: What brings you all the way to Martinsville and Henry County?
>
> APPELLANT: Exactly what I got caught for today.

---

[2] The trial court allowed appellant to review portions of the tape during a brief recess, though it is not clear from the record whether appellant was to review the video for objectionable statements or whether appellant was to review the video for portions that he may have elected to introduce as evidence.

During the discussion of the videotape's admissibility, appellant raised the possibility of introducing portions of the tape to show that he was intoxicated during the interrogation. The trial court ruled that appellant would be permitted to show portions of the tape. We note that the court permitted appellant less than one hour to review a video that lasted four hours. In fact, the trial court noted repeatedly that appellant should know exactly what was said on the tape, as "he was there."

        \*     \*     \*     \*     \*     \*     \*

        INTERVIEWER:     For drugs?

        APPELLANT:       Yeah.

Appellant objected, arguing that the statement was unduly prejudicial and would affect the impartiality of the jury. Appellant further objected to the entry of the "Danville" portion of the videotape altogether, as it was unnecessary to show his taped confession because he had signed a written statement, which the Commonwealth had previously introduced into evidence. The Commonwealth argued that it was necessary to show the tape because appellant had called into question his sobriety at the time of the interrogation through his comments in his opening statement and in his questions on cross-examination of the Commonwealth's witnesses. The trial court agreed, and overruled appellant's objection. The trial court then took a brief recess to allow the Commonwealth to further review the video to "see if there's anything else on here that would be objectionable."[3]

When the trial resumed, the court instructed the jury to disregard the question and answer regarding the reason appellant was arrested on the day of the interview. The Commonwealth continued to play the videotape, which contained the following statement about the previous Henry County robbery: "I got caught redhanded [sic] at this particular job. . . . " Appellant objected, and the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, to the extent this tape we are
> viewing contains any reference to anything which may have
> occurred outside of Danville, specifically outside the incident
> which is at issue in this Court today, the Check 'n Go . . . the
> alleged Check 'n Go robbery, it is to be disregarded. It is not
> relevant to these cases, and it is not to be considered by you as
> evidence in these cases today.

---

[3] The record does not disclose whether the Commonwealth did review the video at that time.

The Commonwealth resumed playing the videotape to the jury:

| | |
|---|---|
| INTERVIEWER: | One mistake don't make you bad. |
| APPELLANT: | That was no one mistake. |
| INTERVIEWER: | There have been several. |
| APPELLANT: | I'm pretty sure you are aware of them. History . . . got a bad history. |

\* \* \* \* \* \* \*

APPELLANT: [T]he thing is now, you know, everybody is thinking as far as you know, the authorities here in Henry County, they're thinking I'm a serial robber, you know. . . . [T]his is my first time doing a [sic] armed robbery. I had a robbery charged back in the day, but there was no weapon used . . .

The trial court stopped the tape and instructed the jury:

Ladies and gentlemen of the jury, to the extent that there's any reference to anything that's not relevant to this proceeding today, it is to be disregarded, as I instructed you earlier. I just heard something on the tape that relates to apparently something about the past, and that is to be disregarded. It is not evidence in this case.

Appellant again objected to the continued playing of the tape to the jury, noting that the jury had again heard an inflammatory remark. Appellant asked the trial court to exclude the tape from evidence as it undermined his presumption of innocence. The Commonwealth argued that the only purpose for showing the videotape was to demonstrate that appellant was coherent during the interrogation, as appellant had "opened the door" through his opening statements and cross-examination of the Commonwealth's witnesses regarding his sobriety that day. The trial court granted appellant's continuing objection and refused to allow the tape to be played any further, ruling however that the Commonwealth could offer the remainder of the tape in rebuttal

- 7 -

if appellant "put into issue [his] ability to have made the statement." Appellant renewed his objection to the videotape being played for any purpose.

Appellant also argued that damage had already been done to his presumption of innocence by the evidence of other crimes already heard by the jury, but the trial court ruled that it had "instructed the jury as best it can." The trial court again instructed the jury to disregard "any reference to any incidents that occurred other than those for which we are in Court on today."

Appellant presented no evidence. The jury found appellant guilty of armed robbery. At sentencing, the Commonwealth introduced one burglary conviction from 1988, a burglary and a grand larceny conviction from 1988, a burglary and a grand larceny conviction from 1991, a robbery conviction from 1992, and armed robbery and grand larceny convictions from 1993. After deliberating for twelve minutes, the jury recommended appellant serve life in prison.

This appeal follows.

## ANALYSIS

On appeal, appellant contends the trial court erred in allowing the admission of videotape evidence that contained statements of other crimes committed by appellant.[4] In reviewing this argument, we must consider whether: (1) the evidence of other crimes was admissible; (2) the trial court erred in relying on cautionary instructions to remedy the admission of other crimes evidence; and (3) if any error occurred, whether it was harmless.

### Admissibility of Other Crimes Evidence

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v.

---

[4] Appellant does not contend on appeal that the entire tape was inadmissible. Our review is limited to appellant's argument that the portions of the videotape that contain statements about other crimes were inadmissible.

Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). However, "[b]y definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000).

Evidence that an accused has committed other crimes, "by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial." Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

> Generally, evidence that a defendant has committed crimes other than the offense for which he is being tried is highly prejudicial and inadmissible. Such evidence confuses the issues before the jury and tends to prejudice the defendant in the minds of the jury by showing his or her depravity and criminal propensity. This rule is not without exception. Evidence of other crimes or convictions may be admitted for the purpose of, among other things, impeaching the credibility of a witness, including a criminal defendant, attacking a defendant's character on cross-examination, or proving a relevant issue or element of the offense charged, such as motive, intent, common scheme or plan, knowledge or identity.

Hackney v. Commonwealth, 28 Va. App. 288, 293, 504 S.E.2d 385, 388 (1998) (citations omitted).

Citing Thornton v. Commonwealth, 31 Va. App. 825, 525 S.E.2d 646 (2000), and Kirkpatrick v. Commonwealth, 211 Va. 269, 176 S.E.2d 802 (1970), the Commonwealth argues that other crimes evidence is admissible because appellant's statements regarding other crimes were "so interwoven with his overall statement that they could not be completely redacted from the videotape." This argument is based on an incorrect statement of the law and is without merit. Both Thornton and Kirkpatrick hold that evidence of other crimes can be admitted when the two *crimes* are so intertwined as to not be easily separated without affecting the propriety of the statement. Here, it is not the crimes that are intertwined, but the statements themselves. This cannot serve as a basis to admit evidence of other crimes.

While the Commonwealth repeatedly acknowledged to the court below that evidence of other crimes had no place in appellant's trial, they argued that the videotape should be admitted to show appellant's demeanor during the interrogations.[5] They contended below, as they do on appeal, that appellant "opened the door" through his opening statement and his questioning of the Commonwealth's witnesses by suggesting that his statements were made while he was intoxicated.[6]

Assuming, without deciding, that the portions of the videotape were admissible to show appellant's demeanor, this does not provide an adequate basis for allowing evidence of other crimes to be admitted at trial. There were other permissible means by which the Commonwealth could have shown appellant's demeanor. Indeed, the trial court recognized that other crimes evidence could not be admitted, ruling that such evidence was not relevant to the present charges. We agree that the statements of appellant as to other crimes were inadmissible at trial.

<u>Review of the Videotape and Use of Cautionary Instructions</u>

It is within the discretion of the trial court to require the Commonwealth to redact a videotape and to decide whether to review the videotape before it is presented to the jury. "'[T]he conduct of a trial is committed to the trial judge's discretion, and absent evidence of an

---

[5] The Commonwealth also suggests that the evidence regarding appellant's purchase of drugs using the proceeds from the robbery is admissible based on appellant's opening statement. Appellant did suggest in his opening statement that he was not guilty because no proceeds from the robbery were found during the search of his home. However, appellant did not cross-examine the Commonwealth's witnesses about what was recovered in the search, nor did he present this evidence during his case-in-chief. Thus, his remarks during his opening statement were not enough to "open the door" to the evidence of his purchase of drugs. See <u>Fields v. Commonwealth</u>, 2 Va. App. 300, 343 S.E.2d 379 (1986) (holding that, because opening statements are not evidence, counsel cannot open the door to otherwise inadmissible evidence by an assertion made in an opening statement).

[6] To open the door to other crimes evidence, appellant must have "invited" the error through his questioning of the witnesses. See <u>Crest v. Commonwealth</u>, 40 Va. App. 165, 174, 578 S.E.2d 88, 92 (2003). On cross-examination, appellant elicited testimony that he had been arrested in Henry County on separate charges. However, this questioning did not "invite" into evidence the specific crime with which he was charged or his involvement in other robberies. Thus, there is no merit to the Commonwealth's argument.

abuse of this discretion, we will not disturb his rulings on that subject.'" Griffin v.

Commonwealth, 22 Va. App. 622, 625, 472 S.E.2d 285, 287 (1996) (quoting Justus v.

Commonwealth, 222 Va. 667, 676, 283 S.E.2d 905, 910 (1981)).

The trial court instructed the Commonwealth to redact any statements regarding other

crimes from the videotape before it was played to the jury. The Commonwealth failed to do so,

as was revealed to the trial court when the Commonwealth played the "Martinsville" portion of

the tape for the court. After reviewing the "Martinsville" portion of the videotape, the trial court

was on notice that the Commonwealth had not redacted the tape as instructed. The trial court

heard statements regarding other crimes on the "Martinsville" portion of the videotape, and, thus,

should have realized the danger that the jury would hear inadmissible evidence.

As a substitute for reviewing the entire videotape outside of the presence of the jury and

ensuring the integrity of the evidence presented at trial, the trial court decided to remedy the

introduction of any inadmissible statements through cautionary instructions. As a result, the jury

repeatedly heard evidence of other crimes, requiring the trial court to issue four separate

cautionary instructions.

Generally, a trial court may cure errors arising from inadmissible evidence being

improperly presented by promptly instructing the jury to disregard the inadmissible evidence.

LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983). "We will presume

that a jury has followed the trial court's prompt and explicit curative instructions, unless the

record clearly shows that the jury disregarded the instructions." Schmitt v. Commonwealth, 262

Va. 127, 147-48, 547 S.E.2d 186, 200 (2001).

However, there are instances in which cautionary instructions given by the trial court

regarding inadmissible evidence cannot be presumed to have been followed by the jury.

> "[T]he admission of incompetent evidence is reversible error
> notwithstanding the fact that the trial court, after its admission,

- 11 -

> instructed the jury to disregard it, if such illegal evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict." "If the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial."
>
> Whether a manifest probability exists that the improper evidence prejudiced the accused despite the cautionary instruction depends upon the nature of the incompetent evidence when considered in relation to the nature of the charges, the other evidence in the case, and manner in which the prejudicial evidence was presented.

Mills v. Commonwealth, 24 Va. App. 415, 420-21, 482 S.E.2d 860, 862-63 (1997) (citations omitted).

In Mills, we reversed appellant's convictions for various traffic offenses, resisting arrest, and driving under the influence when the arresting officer testified before the jury to the presence of drug needle marks on Mills's arms. Id. The trial court's prompt cautionary instructions to the jury not to consider the officer's comments were not enough to cure the prejudicial impact on the accused's presumption of innocence. We held that, "[a]lthough evidence of the defendant's guilt was overwhelming, we cannot say that the prejudicial evidence did not affect the length of the sentences or the amount of fines that the jury recommended and the judge imposed." Id. at 421, 482 S.E.2d at 863. Thus, we found that the error was not harmless.

In Powell v. Commonwealth, 13 Va. App. 17, 409 S.E.2d 622 (1991), we similarly held that the admission of other crimes evidence was reversible error despite the cautionary instruction given by the trial court. Powell was charged with various drug violations. Id. at 18, 409 S.E.2d at 623. The prosecutor questioned Powell on cross-examination regarding his prior felony convictions. Id. at 19, 409 S.E.2d at 624. Powell testified falsely regarding the number of prior convictions, and the prosecutor proceeded to question him about the specifics of those convictions, which had involved drug distribution. Id. at 19-20, 409 S.E.2d at 624. The trial court instructed the jury to limit its consideration of prior convictions to impeachment purposes

- 12 -

only. Id. at 27, 409 S.E.2d at 628. We held that, despite Powell's false testimony that allowed for impeachment by the prosecutor, "[t]he risk of prejudice was so great because the evidence portrayed [Powell] as a drug dealer" and its admission constituted reversible error that could not be cured by a cautionary instruction. Id. at 27-28, 409 S.E.2d at 628-29.[7]

Here, the jury heard multiple statements regarding other crimes committed by appellant, including several references to other robberies, the same crime for which appellant was on trial. Henry County detectives questioned appellant about the Danville robbery using references to other robberies, asking if he "used the same car" and if he planned to "rob that [one] too." In referring to the Henry County robbery, appellant said that he had been caught "redhanded [sic] at that particular job." Appellant also made reference to Henry County detectives having the impression that he was a "serial robber." Thus, the jury had evidence before it that appellant was involved in a robbery in Danville. Each statement was accompanied by an admonishment by the trial court that these statements were not evidence against appellant.

The repeated admission of inadmissible other crimes evidence had a cumulative effect on the impartiality of the jury that could not be cured by cautionary instruction. See Maxey v. Hubble, 238 Va. 607, 616, 385 S.E.2d 593, 597 (1989) (holding that where counsel persisted in making objectionable remarks despite the trial court's admonishments and instructions to the jury to disregard those remarks, "an appellate court will presume that the prejudicial effect of the improper conduct was too strong to be removed by further admonitions or jury instructions").

---

[7] Powell is not, as the dissent suggests, distinguishable from the instant case by virtue of the nature of the cautionary instruction given by the trial court. In both Powell and the instant case, the trial court allowed inadmissible evidence to be heard by the jury. The point relevant for our analysis is that in Powell, as here, a cautionary instruction could not cure the trial court's error. It is inconsequential that the instruction in Powell limited the jury's consideration of the evidence to a specific purpose, where the instructions here barred any jury consideration. When determining whether the instruction was adequate to cure the error, we look to the factors noted in Mills above, none of which involve considering the scope of the instruction given.

Under these circumstances, it is impossible to conclude that the jury did not consider these other crimes in determining appellant's guilt and the length of the sentence recommended. Instead, this "evidence was so impressive that it probably remained on the minds of the jury and influenced their verdict." Mills, 24 Va. App. at 420, 482 S.E.2d at 862.[8] We find that the trial court abused its discretion by embarking on a procedural path that relied on cautionary instructions to remedy the erroneous and deliberate admission of other crimes evidence. We further find the cautionary instructions could not remedy this error.[9]

The only question remaining is whether these errors were harmless as to both the finding of guilt and to the sentence recommended by the jury.

---

[8] We do not, as the dissent suggests, cite to Mills or Maxey for the proposition that appellant need not move for a mistrial to preserve this issue for appeal. Instead, we rely on those cases for the proposition that, in some instances, a cautionary instruction cannot cure a prejudicial error made by the trial court. The fact that appellants in Mills and Maxey moved for a mistrial does not affect this Court's decisions in those cases on the curative effect of the cautionary instructions given by the trial court.

[9] An alleged error is sufficiently preserved for consideration on appeal if "at the time the ruling or order of the court is made or sought, [a party] makes known to the court the action which he desires the court to take or his objections to the action of the court and his grounds therefor." Code § 8.01-384. The purpose of this rule is "to avoid unnecessary appeals, reversals and mistrials by allowing the trial judge to intelligently consider an issue and, if necessary, to take corrective action." Campbell v. Commonwealth, 12 Va. App. 476, 480, 405 S.E.2d 1, 2 (1991).
Regarding a request for a mistrial, "[t]he recognized purpose of this requirement is to prevent retrials by calling the error to the attention of the trial judge, who may then caution the jury to disregard the inappropriate remarks." Craddock v. Commonwealth, 16 Va. App. 402, 405, 429 S.E.2d 889, 891 (1993). The purpose of making contemporaneous objections is to advise the court of whatever corrective action the requesting party wishes the court to take. Campbell, 12 Va. App. at 480, 405 S.E.2d at 2.
In this case, appellant challenged the admissibility of the videotape. He objected on at least five occasions. Clearly, the court was aware of his position regarding the evidence. We find no precedent that requires a defendant to move for a mistrial when he timely presents his objection to the trial court and the court subsequently makes a ruling unfavorable to the defendant. We conclude that appellant's failure to request a mistrial does not procedurally bar this appeal.

- 14 -

Harmless Error

When deciding whether non-constitutional error is harmless in the context of a criminal proceeding, we must apply Code § 8.01-678 that states in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any error committed on the trial.

The Virginia Supreme Court stated in Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001), that "[i]n a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless." The Clay Court adopted the following test for non-constitutional harmless error that was applied by the United States Supreme Court in Kotteakos v. United States, 328 U.S. 750 (1946):

> "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Clay, 262 Va. at 260, 546 S.E.2d at 731-32 (quoting Kotteakos, 328 U.S. at 764-65).

We hold that the trial court's errors were harmless as to the guilt of appellant. Disregarding the videotaped statements, the evidence of appellant's guilt was overwhelming. Two detectives testified as to appellant's oral confession to the robbery of the Danville Check 'n Go in two different interviews with police. In addition, the Commonwealth introduced appellant's written confession to the crime where appellant described the clothing he wore during the robbery. The jury had the opportunity to view the video recording of the crime, where

appellant fit the physical appearance of the robber, including the clothing appellant described. Appellant's fingerprints were recovered from the note the robber handed to Ms. Jones directing her to give him the money. At trial, Ms. Jones positively identified appellant as the man who robbed her, and testified to her prior identification of appellant in a photo array presented to her by detectives shortly after the crime occurred. Given the weight of this evidence against appellant, we find that substantial justice has been reached and the error in admitting evidence of prior offenses in appellant's guilt phase of the trial was harmless.

However, we do not find evidence of appellant's involvement with drugs, or evidence of the Henry County offense, to be harmless with respect to the sentence imposed. "[T]he bifurcated procedure established in Code § 19.2-295.1 clearly manifests a legislative intent to provide juries with information specific only to sentencing[.]" Gilliam v. Commonwealth, 21 Va. App. 519, 525, 465 S.E.2d 592, 595 (1996). "[T]he prior criminal convictions of a felon, including previous efforts to punish and rehabilitate, '"bear upon a tendency to commit offenses, the probabilities of rehabilitation, and similar factors"' indispensable to the determination of an appropriate sentence." Id. at 524, 465 S.E.2d at 595 (citations omitted). "We cannot at once reason that such considerations promote enlightened sentencing and dismiss as harmless the prejudicial effects of inadmissible, although facially relevant, evidence pertaining to sentencing issues." Webb v. Commonwealth, 31 Va. App. 466, 471, 524 S.E.2d 164, 167 (2000).

During the guilt phase of trial, any reference to a prior robbery or to the "serial robber" was harmless as evidence of appellant's two prior robbery convictions was properly admitted during the sentencing phase. However, allowing the jury to hear of appellant's drug charge and drug purchases, as well as his robbery offense in Henry County, during the guilt phase was not harmless, as the jury did not hear this evidence during the penalty phase. Further, both of these

- 16 -

prior acts refer to recent behavior, whereas appellant's prior offenses occurred in the past, the most recent conviction being in 1993.

Finally, the jury deliberated a mere twelve minutes before recommending appellant serve a life sentence, the maximum penalty for armed robbery. We would usurp the role of the jury to conclude that the sentence would have been the same had the jury not known about appellant's drug activity and his current arrest in Henry County. We therefore find that the admission of these prior acts into evidence during the guilt phase of appellant's trial was not harmless error with respect to the sentence imposed.

## CONCLUSION

After the Commonwealth and the trial court agreed that evidence of prior crimes was inadmissible, the trial court nevertheless exposed the jury to inadmissible evidence. The court then attempted to cure the error by giving cautionary instructions. We find the trial court erred by employing this procedure. The error was harmless in determining appellant's guilt, but we find it substantially affected the sentencing recommendation made by the jury. Accordingly, we

affirm appellant's conviction for armed robbery, but reverse and remand to the trial court for

re-sentencing consistent with this opinion.[10]

Affirmed in part,
reversed in part,
and remanded.

---

[10] Code § 19.2-295.1 states in relevant part:

> If the sentence imposed pursuant to this section is subsequently set aside or found invalid solely due to an error in the sentencing proceeding, the court shall impanel a different jury to ascertain punishment, unless the defendant, the attorney for the Commonwealth and the court agree, in the manner provided in § 19.2-257, that the court shall fix punishment.

Here, we found that error occurred in the guilt phase of the trial. Although we determined that the error was harmless to the guilt phase, the effects of the error spilled over into the sentencing phase, thus tainting the sentencing process. Therefore, the error during the guilt phase did affect the sentencing. We conclude there was error at sentencing.

In order for us to remand for re-sentencing only, we must find, pursuant to Code § 19.2-295.1, that the basis for reversal was "solely due to an error in the sentencing proceeding." "Solely" is defined as "entirely" or "exclusively." The American Heritage Dictionary 1229 (1982). Thus, if there was error in the guilt phase *and* in sentencing, we must reverse and remand for a new trial. However, we have held here that the error at the guilt phase was harmless, thus affirming the conviction. To remand for a new trial would be a futile act.

When interpreting statutory language, the "statute must be construed with reference to its subject matter, the object sought to be attained, and the legislative purpose in enacting it; the provisions should receive a construction that will render it harmonious with that purpose rather than one which will defeat it." Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003) (citing Stanley v. Tomlin, 143 Va. 187, 195, 129 S.E. 379, 382 (1925)) "Where a particular construction of a statute will result in an absurdity, some other reasonable construction which will not produce the absurdity will be found." Miller v. Commonwealth, 180 Va. 36, 41, 21 S.E.2d 721, 723 (1942).

We conclude that the statutory language allows this Court to remand for re-sentencing when the error in the guilt phase was harmless thereby creating no need for a new trial on the merits. The only harm done was in sentencing.

Humphreys, J., concurring, in part, dissenting, in part, and dissenting from the judgment.

I agree that evidence relating to three of the defendant's "other crimes" was inadmissible during Young's criminal trial. However, because I believe that the cautionary instructions were sufficient to cure any incidental prejudice that may have resulted from the inadvertent disclosure of these "other crimes," I would hold that the trial court did not abuse its discretion in allowing the videotaped confession to be played to the jury. Accordingly, I would affirm both the conviction and the defendant's resulting life sentence.

Initially, I would hold that Young's confession that he used the money from the Check 'n' Go robbery to purchase "a little bit of drugs . . . little bit of crack . . . [and a] little bit of heroin" was both relevant and admissible, and, thus, I would hold that the trial court did not abuse its discretion in determining that the probative value of this statement outweighed its potential prejudicial effect.

It is well established that, in a criminal prosecution, evidence that shows or tends to show that the defendant is guilty of other crimes, even if of the same nature as those charged in the indictment, is inadmissible for the purpose of showing that the accused was likely to commit the crime charged in the indictment. See Scates v. Commonwealth, 262 Va. 757, 761, 533 S.E.2d 756, 758-59 (2001); Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 803, 805 (1970). "The purpose of this rule is to prevent confusion of offenses, unfair surprise to the defendant and a suggestion of 'criminal propensity,' thus preserving the 'presumption of innocence.'" Crump v. Commonwealth, 13 Va. App. 286, 289, 411 S.E.2d 238, 240 (1991) (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).

However, "[e]vidence of other crimes, which are 'so intimately connected and blended with facts proving the commission of the offense charged may be admissible because it cannot be separated with propriety.'" Thornton v. Commonwealth, 31 Va. App. 825, 829, 525 S.E.2d

646, 648 (2000) (quoting Sutphin v. Commonwealth, 1 Va. App. 241, 246, 337 S.E.2d 897, 899 (1985)).  That is, "[w]here a course of criminal conduct is continuous and interwoven, consisting of a series of related crimes, the perpetrator has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial."  Scott v. Commonwealth, 228 Va. 519, 526-27, 323 S.E.2d 572, 577 (1984).  Further, "[t]he fact-finder is entitled to all of the relevant and connected facts, including those which followed the commission of the crime on trial, as well as those which preceded it; even though they may show the defendant guilty of other offenses."  Id.

I would hold that Young's confession that he bought illegal drugs with the money he stole from the Check 'n' Go is admissible because this "other crime" was "continuous and interwoven" and "intimately connected" with the crime for which he was on trial.  Also, Young's confession to purchasing drugs with the stolen money has probative value because it tends to establish that Young did, in fact, commit the crime charged.  Specifically, the fact that Young used the proceeds of the robbery to purchase illegal drugs is probative because it tends to establish that Young had a motive for committing the robbery.  See, e.g., Sutphin, 1 Va. App. at 245, 337 S.E.2d at 899 (noting that "other crimes" evidence is admissible "to prove motive to commit the crime charged"); see also Rose v. Commonwealth, 270 Va. 3, 10, 613 S.E.2d 454, 457 (2005) (noting that "other crimes" evidence is "'permissible in cases where the motive . . . of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial'" (quoting Commonwealth v. Minor, 267 Va. 166, 172, 591 S.E.2d 61, 65 (2004))); Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998) ("[E]vidence of other crimes is allowed when it tends to prove motive, intent, or knowledge of the defendant.").

Moreover, although revealing the illegal drug transaction would have some incidental prejudicial effect, I would further hold that the trial court did not abuse its discretion by determining that the probative value of this statement outweighed its potential prejudicial effect. See generally Rose, 270 Va. at 11, 613 S.E.2d at 458 ("Admission of evidence of other crimes committed by a defendant . . . is subject to the further requirement that the legitimate probative value of the evidence must exceed the incidental prejudice to the defendant."). The mere fact that this statement tends to show that Young purchased illegal drugs does not negate its relevance as to the crime charged, nor, in my opinion, does it automatically render that evidence unfairly prejudicial. Thus, I would hold that the trial court did not clearly abuse its discretion in concluding that the probative value of the statement outweighed its potential prejudicial effect. See Thornton, 31 Va. App. at 829, 525 S.E.2d at 647-48 (holding that the trial court did not err in admitting the "defendant's statement that he had sold the other drugs the night before" because that statement "was intimately connected with and arose out of the same transaction for which the defendant was on trial," further noting that "[t]he probative value of [] evidence explaining the defendant's conduct and completing the story of the transaction 'outweighed any incidental prejudice to [the defendant]'" (quoting Newton v. Commonwealth, 29 Va. App. 433, 454, 512 S.E.2d 846, 856 (1999)) (second alteration in original)).

In sum, because the Commonwealth introduced evidence of the drug transaction as part of a continuous course of events, rather than "for the prohibited purpose of showing a predisposition on the part of the accused to commit crime," Glover v. Commonwealth, 3 Va. App. 152, 161, 348 S.E.2d 434, 441 (1986), I would hold that this statement is both relevant and admissible.

I agree, however, with the majority's conclusion that the remaining "other crimes" evidence was inadmissible.[11] I also agree with the general principle that, in some circumstances, a cautionary instruction is insufficient to cure the prejudice that may have been caused by the inadvertent disclosure of inadmissible, "other crimes" evidence. However, in those circumstances, the defendant's appropriate remedy is to move for a new trial. See Terry v. Commonwealth, 5 Va. App. 167, 168-69, 360 S.E.2d 880, 880-81 (1987) ("[I]f the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial."); see also Maxey v. Hubble, 238 Va. 607, 385 S.E.2d 593 (1989); Mills v. Commonwealth, 24 Va. App. 415, 482 S.E.2d 860 (1997). Young never moved for a mistrial or for a new trial. Moreover, Young affirmatively requested, on at least one occasion, that the trial court instruct the jury to disregard these statements. Because Young both consented to the issuance of the cautionary instructions and neglected to move for a new trial, I would hold that Young cannot now argue that the jury was so prejudiced by its exposure to the "other crimes" evidence that his conviction should be reversed.[12]

---

[11] The remaining statements consisted of: (1) the discussion during which the investigator asked, "What brings you all the way to Martinsville and Henry County," Young responded, "Exactly what I got caught for today," the detective then asked if Young was caught because of "drugs," and Young responded, "Yeah"; (2) Young's statement that he "got caught redhanded at this particular job"; and (3) the discussion during which Young stated that "the authorities here in Henry County, they're thinking I'm a serial robber, you know . . . this is my first time doing a armed robbery. I had a robbery charged back in the day, but there was no weapon used," the investigator then asked whether it was "a common law robbery," and Young responded, "Common law . . . yeah, yeah."

[12] I also disagree with the majority's characterization of the Commonwealth's disclosure of the "other crimes" evidence as "deliberate." For example, the record is clear that, on at least one of these three occasions, the Commonwealth—rather than the trial court or the defendant—stopped the tape when the "other crimes" evidence was first mentioned. But even if the Commonwealth deliberately paraded this evidence before the jury, the defendant's appropriate remedy would be to move for a mistrial or for sanctions against the Commonwealth.

The majority concludes, however, that the trial court abused its discretion by "expos[ing] the jury to inadmissible evidence" and then "attempt[ing] to cure the error by giving cautionary instructions." In effect, then, the majority holds that the trial court erred in failing, *sua sponte*, to set aside the verdict and grant a new trial. Neither this Court nor the Virginia Supreme Court has ever held that the trial court automatically abuses its discretion when the jury hears inadmissible evidence, the trial court issues a requested cautionary instruction, but the trial court then fails to grant a mistrial, *sua sponte*. Thus, I believe the majority's approach represents an unwarranted and unprecedented extension of existing Virginia law.[13]

As the majority recognizes, "[o]nce a jury is instructed regarding the use or limitations placed upon specific evidence, they are presumed to follow such instructions." Lewis v. Commonwealth, 8 Va. App. 574, 580, 383 S.E.2d 736, 740 (1989). Thus, "[g]enerally, a trial court may cure errors arising from improperly presented evidence by immediately instructing the jury to disregard that evidence." Terry, 5 Va. App. at 168-69, 360 S.E.2d at 880-81. Under the

---

[13] I note that, of the three cases cited by the majority in support of its position, two involved the reversal of the trial court's denial of a new trial. See Maxey, 238 Va. at 616, 385 S.E.2d at 597 (holding that the defendant's "motion for a new trial should have been granted"); Mills, 24 Va. App. at 420, 482 S.E.2d at 862 ("The sole issue is whether the trial court erred by refusing to grant a mistrial after the Commonwealth's principal witness interjected incompetent and inadmissible evidence into the trial during cross-examination."). Both of those cases are, therefore, readily distinguishable. In the third case, Powell v. Commonwealth, 13 Va. App. 17, 409 S.E.2d 622 (1991), this Court held that a cautionary instruction was insufficient to cure the prejudice to the defendant where the trial court affirmatively and improperly allowed the Commonwealth to use other crimes evidence to impeach the defendant during cross-examination, and the court then "gave a cautionary instruction which told the jury that the evidence of other offenses could only be considered for impeachment of the defendant and could not be considered as evidence of guilt or in assessing punishment." Id. at 27, 409 S.E.2d at 628. In Powell, then, the trial court affirmatively admitted the "other crimes" evidence and then instructed the jury that it should only consider that evidence for a limited purpose. Here, in contrast, the trial court did not affirmatively admit the "other crimes" evidence, instead informing the jury that it could not consider that evidence for any purpose. Accordingly, I believe that Powell is also distinguishable and fails to support the majority's position.

circumstances of this case, the trial judge cautioned the jury to disregard the evidence relating to these other incidents on at least four separate occasions.  Because the jury is presumed to have followed these cautionary instructions, in the absence of any motion for a mistrial, I would hold that the trial judge's numerous admonitions to the jury to disregard the other crimes evidence were sufficient to cure any incidental prejudice that may have been caused by the inadvertent disclosure of this information.  See id.

For these reasons, I would affirm the judgment below.  Accordingly, I respectfully dissent.