COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


MARQUIS LOVELLE WHITE, S/K/A
 MARQUIS LAVELLE WHITE
                                          OPINION BY
v.    Record No. 2699-00-2         JUDGE LARRY G. ELDER
                                         MARCH 19, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                   Leslie M. Osborn, Judge

          Robert H. Morrison (Watson, Nelson,
          Morrison & Miller, P.C., on brief), for
          appellant.

          H. Elizabeth Shaffer, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Marquis Lovelle White, sometimes known as Marquis Lavelle

White (appellant), appeals from his jury trial convictions for

second degree murder and use of a firearm in the commission of

murder.  On appeal, he contends the trial court's denial of his

motion to dismiss violated Code § 19.2-243, the speedy trial

statute, because he was held "continuously in custody" for more

than five months before trial.  The Commonwealth contends

appellant waived his speedy trial claim.  In light of the trial

court's ruling that appellant did not waive his claim in that

court, we do not entertain the Commonwealth's procedural bar

argument.  We assume without deciding that appellant remained

"in custody," as that term is used in Code § 19.2-243, despite his physical release from jail, until he executed the personal recognizance bond. Nevertheless, we look to the legislature's intent in enacting Code § 19.2-243, which provides that a defendant may not invoke statutory speedy trial protections where the defendant's conduct has caused the state to be unable to try him within the five-month period. We hold, by analogy, that where a defendant's conduct caused him to be held "continuously in custody" for more than five months, the state is not responsible and the statutory speedy trial limit does not apply. Thus, appellant may not invoke the five-month limit of Code § 19.2-243 because the court had taken all necessary legal steps to release appellant from custody and appellant's refusal to execute the personal recognizance bond containing standard conditions was the only impediment to a full legal release.

## I.

## BACKGROUND

On October 4, 1999, appellant was arrested on the instant charges and held without bail. On January 21, 2000, the district court found probable cause to believe appellant committed the charged offenses and certified them to the circuit court. On motion of appellant, the district court set a bond of $200,000 with security, but appellant was unable to post that bond and remained in jail. The grand jury issued an indictment

at its March 2000 term, and the case was scheduled to be tried on June 23, 2000.

Sometime prior to trial, the Commonwealth discovered that the date scheduled for appellant's trial was two days beyond the five-month limit posed by Code § 19.2-243 for a defendant held continuously in custody.  At a hearing on June 14, 2000, the Commonwealth moved the court to enter an order "that would reduce [appellant's] bond" of $200,000 with surety to a personal recognizance bond (p.r. bond) of $200,000 without any surety but "subject . . . to pretrial release and monitoring through . . . Court Services."  Counsel for appellant said he objected "[f]or the record" but that it "would be almost ludicrous" for him to "give an argument against it."  It was undisputed that the purpose of the motion was to prevent the speedy trial statute from barring appellant's trial.  Following questioning by the trial court, appellant said he understood the conditions of the bond and the fact that he would be released that day.  The court then entered an order "ORDER[ING] the release of [appellant] upon his own recognizance to appear before this Court on June 23, 2000 at 9:30 A.M. for trial" and indicating that appellant "shall be monitored during his pre-trial release by the . . . Court Services Unit."  The order did not include a dollar amount and also omitted certain conditions enunciated by the court from the bench, including the condition that appellant have no

contact with the Commonwealth's witnesses.  Appellant's counsel endorsed the order "SEEN," with no objection specified.

Later on the afternoon of June 14, 2000, appellant refused to sign the paperwork prepared by the clerk's office as well as "the bond that the magistrate actually issued on him."  The Commonwealth Attorney's office originally told the magistrate to release appellant regardless of whether he signed the bond, but appellant's counsel objected.  After multiple conversations involving the Commonwealth Attorney's office, appellant's counsel, the magistrate, and a judge other than the one who had issued the bond order, the parties agreed that appellant would remain in jail until the next day, when they hoped to obtain a ruling from the judge who had issued the order directing appellant's release.  However, before the parties could communicate this agreement to the magistrate, appellant was released from jail without executing the bond.

Appellant then requested a continuance to allow him time to file a motion to dismiss based on his claim that the prosecutor's actions surrounding appellant's release from jail amounted to prosecutorial misconduct.  At the June 19, 2000 hearing on that motion, appellant's counsel appeared at first to concede that appellant no longer had a viable motion to dismiss based on a violation of the speedy trial statute's five-month limit for defendants held "continuously in custody."  However, after an extended colloquy on the record between appellant's

counsel and the court, the court ruled, "[Y]ou're not waiving the five[-]month [limit] and saying that there's no problem with that. . . . I don't think you've waived anything." The trial court denied the motion to continue.

On June 21, 2000, appellant filed a written motion to continue and two motions to dismiss, one based on prosecutorial misconduct and the other based on a violation of the speedy trial statute. At a hearing on June 22, 2000, the trial court granted the motion to continue and set the motions to dismiss for hearing on July 17, 2000. On the Commonwealth's motion, the trial court entered an order clarifying the earlier bond order. That order provided as follows:

> On the motion of the defendant, and for good cause shown, this case is continued to July 17, 2000 at 2:00 p.m. for the hearing of defense motions, and thereafter to July 19, 2000 at 9:30 a.m. for trial.
> The defendant is hereby recognized to reappear before the Court on each of those days and times. By his signature hereto, he agrees that his appearance is secured by a personal recognizance bond in the amount of $200,000, which is issued on his promises to be of uniform good behavior while on bond and that he will be subject to and compliant with the pretrial supervision of Halifax-Pittsylvania Court Services.

That same day, five months and one day after the preliminary hearing, appellant endorsed the order, "I AGREE TO THIS."

At the hearing on July 17, 2000, the Commonwealth argued that the court's June 14 order directing that appellant be released on his own recognizance was complete as issued and that

appellant's signature was not required for his release.  The trial court ruled, "I cannot agree . . . .  I don't think the [June 14 bond order] qualifies as a recognizance.  I think from the language of the hearing and the language of the bond Order that the judge intended that the recognizance would be done at a later time."  It also indicated that the order was merely an authorization to bond appellant.  The court then denied the motion to dismiss based on prosecutorial misconduct.

On the speedy trial motion, the following exchange took place:

> [APPELLANT'S COUNSEL]:  What I'm saying is the record does not ever show that [appellant's] custody was transferred from the jail to another bonding party or to another person or to himself or anything else.  The record of this court has a bond Order that we've talked about at length today and then [shows] a release on the 154th day.
> So if the Court confines your review of this to the record, the record itself shows that [appellant] was held continuously in custody until the 154th day, which is after the statutory speedy trial time frame.
>
> THE COURT:  And you're talking about the word "custody" or held in custody?  He was not held after the day he was released, and you've got a statement of facts that you all stipulated to.
>
> [APPELLANT'S COUNSEL]:  Well, Your Honor, I think that obviously is a matter of interpretation.  We would submit that he was held in custody of the jail.  Whether he's on -- I mean, every day you have people released on work release furloughs.  Those people are still in the custody of the jail whether they're behind bars or not.

The Commonwealth argued that appellant had conceded previously that the five-month speedy trial period ended when appellant was released from physical custody. The Commonwealth did not, however, make any claim of prejudice at that time. The trial court then specifically observed, "I'm not ruling you waived [the five-month speedy trial argument] by any statements you made, [counsel for appellant]. I'm not going to rule that." The court then denied the motion, ruling that "the language in the statute 'held in custody' has its regular and ordinary meaning . . . . And we know what date he was released and that was before the five[-]month maximum period under the statute. And so I'm going to deny your second Motion also."

Appellant was tried and convicted for the charged offenses, and he noted this appeal.

## II.

## ANALYSIS

### A.

### PROCEDURAL BAR

The Commonwealth contends appellant waived his right to raise the statutory speedy trial claim by his statements to the court at the June 19, 2000 hearing. Although the trial court held that appellant did not waive his statutory speedy trial argument, the Commonwealth contends this ruling was erroneous. The Commonwealth argues that it was entitled to rely on appellant's concession at the June 19, 2000 hearing and that

this reliance "severely prejudiced" it because it could have asked the trial court to require appellant to execute the p.r. bond that day, which was still within the five-month period. Thus, it contends, the trial court's ruling that appellant did not concede this issue was plainly wrong and we should hold that the trial court reached the right result for the wrong reason.

We disagree. Under appropriate circumstances, we may affirm the decision of a trial court when it has reached the right result for the wrong reason. See, e.g., Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992). However, "the Commonwealth cannot use [this principle] as a subterfuge for a constitutionally prohibited cross-appeal." Id. The Commonwealth is entitled to appeal a trial court ruling only in a limited number of circumstances, and this is not one of them. See, e.g., Code § 19.2-398. Thus, assuming without deciding that the trial court's ruling was wrong, the Commonwealth may not challenge that ruling on appeal.

B.

"CONTINUOUSLY IN CUSTODY" UNDER THE SPEEDY TRIAL STATUTE

Code § 19.2-243 provides in relevant part as follows:

> Where a general district court has found that there is probable cause to believe that the accused has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the

district court; and if the accused is not held in custody but has been recognized for his appearance in the circuit court to answer for such offense, he shall be forever discharged from prosecution therefor if no trial is commenced in the circuit court within nine months from the date such probable cause was found.

Appellant contends that whether an accused is held "continuously in custody" for purposes of calculating the statutory speedy trial period depends not upon whether he physically remains in jail but rather upon whether the appropriate judicial documents indicate he remains lawfully in custody.  Thus, he contends, he remained "continuously in custody" for purposes of the speedy trial statute despite his physical release from jail.  This was so, he contends, both because the court's bond order, standing alone, was insufficient to authorize his release and because his signature on a p.r. bond containing the terms of release outlined orally by the court was not obtained until after the five-month speedy trial period had expired.

We disagree.  We assume without deciding that appellant remained "in custody" for purposes of Code § 19.2-243 until he executed the p.r. bond, despite his physical release from jail.[1] Nevertheless, we conclude that appellant may not rely on the five-month limit on custody in Code § 19.2-243 because, to the

_____

[1] The trial court held the June 14, 2000 bond order was sufficient to authorize appellant's release upon his execution of a p.r. bond, and appellant does not, on appeal, assign error to this conclusion.

extent he remained in legal rather than physical "custody" beyond that period, he did so only because of his own actions in refusing to endorse a p.r. bond containing standard conditions.[2]

In reaching this conclusion, we look to the express language of the speedy trial statute to determine legislative intent.  Code § 19.2-243 provides that the five- and nine-month periods outlined above "shall not apply to such period of time as the failure to try the accused was caused" by numerous circumstances fairly attributable to the accused, expressly including "by reason of his escaping from jail or failing to appear according to his recognizance."  As we previously have noted, "[t]he enumerated exceptions are not all-inclusive; others of a similar nature may be implied.  The exceptions, both express and implied, often look to the defendant's actions which tend to delay the trial."  Cantwell v. Commonwealth, 2 Va. App. 606, 610, 347 S.E.2d 523, 525 (1986) (citation omitted).

As the language in both the statute and Cantwell makes clear, we do not apply the statutory time limits in a vacuum; rather, we must look to the impact of appellant's actions on our

_____

[2] We do not hold that a defendant's failure to obtain release when the court has required security is attributable to him for purposes of the speedy trial calculation.  We do not endorse application of a "financial means" test whenever a defendant who may obtain release on a secured bond fails to post that bond.  We also do not hold that a defendant's failure to obtain release when the court has imposed particularly onerous conditions in a p.r. bond is attributable to that defendant for purposes of the speedy trial statute.

calculations.  Thus, just as a defendant may not invoke

statutory speedy trial protections where his conduct caused the

Commonwealth to be unable to try him within the five-month

period, we hold that a defendant also may not invoke speedy

trial protections where his conduct caused him to be held

"continuously in custody" for more than five months.  We assume

without deciding that "continuously in custody" means lawfully

in the custody of the state as indicated by relevant legal

documents.  Nevertheless, the only reason the relevant legal

documents did not indicate appellant's release from custody was

because appellant refused to execute the p.r. bond.  Whether

appellant remained in jail was irrelevant where the evidence

established that appellant's refusal to endorse the unsecured

bond containing standard conditions was what kept him "in

custody" for purposes of Code § 19.2-243.  Because appellant

retained control over his release under a standard p.r. bond

and, therefore, caused himself to remain "in custody" when he

refused to execute that bond, we hold that the five-month time

limit in Code § 19.2-243 did not bar his trial and conviction.

For these reasons, we hold the trial court's denial of

appellant's motion to dismiss under Code § 19.2-243 was not

erroneous, and we affirm appellant's convictions.

<u>Affirmed.</u>