670 S.E.2d 15

Anthony Dale CRAWFORD

v.

COMMONWEALTH of Virginia.

Record No. 1194–07–2.

Court of Appeals of Virginia,
Richmond.

Dec. 23, 2008.

Samantha E. Freed (Steven D. Rosenfield; Snook & Haughey, P.C., on briefs), Charlottesville, for appellant.

Leah A. Darron, Senior Assistant Attorney General (Robert F. McDonnell, Attorney General, on brief), for appellee.

Present: FELTON, C.J., and ELDER and BEALES, JJ.

LARRY G. ELDER, Judge.

A jury found Anthony Dale Crawford (appellant) guilty of abduction with the intent to defile, rape, and capital murder of Sarah Crawford, his estranged wife, and also convicted him of use of a firearm in the commission of a murder, use of a firearm in the commission of an abduction, and grand larceny. On appeal, appellant argues that the trial court erred when it (1) permitted the Commonwealth to introduce into evidence an affidavit that was prepared as part of Sarah Crawford's request for a protective order against appellant, (2) permitted the Commonwealth to introduce into evidence Mrs. Crawford's non-testimonial statements to her co-workers, and (3) found the evidence was sufficient to support the jury's convictions for abduction with intent to defile and rape. We hold the trial court did not err in admitting the testimony concerning Mrs. Crawford's statements to her co-workers. We hold, in contrast, that the court's admission of the challenged affidavit to prove the truth of the matter asserted violated the Confrontation Clause and that its admission was harmless only as to appellant's conviction for grand larceny. As a result, we reverse all of his convictions except the conviction for grand larceny, which we affirm.

Because appellant also challenges the sufficiency of the evidence to prove rape and abduction with intent to defile, we evaluate the sufficiency of the evidence, including the improperly admitted affidavit, to assure that remand for retrial will not violate double jeopardy principles. We hold the evidence was insufficient to support appellant's convictions for rape, abduction with intent to defile, and use of a firearm in the commission of abduction, and thus we dismiss these indictments. Because we reverse and dismiss the convictions for rape and abduction with intent to defile, which provided the basis for convicting appellant of capital murder rather than

first-degree murder, we also reverse the capital murder conviction. Because appellant does not challenge the sufficiency of the evidence to prove murder, we remand for retrial on an offense no greater than first-degree murder without considering the sufficiency of the evidence to prove this offense. For the same reason, we remand for retrial appellant's conviction for use of a firearm in the commission of murder.

## I. BACKGROUND

Appellant and his wife, Sarah Crawford, separated in October of 2004. Several people were aware, based on statements made by Mrs. Crawford, that she was afraid of her husband. Mrs. Crawford told both a co-worker and her boss that she was afraid appellant might harm her. Prior to their separation, Mrs. Crawford even chose the location of her desk at work because it overlooked the parking lot and she wanted to be able to see appellant if he drove up to the building.

On October 29, 2004, after their separation, Mrs. Crawford went to the apartment in Manassas that she previously shared with appellant in order to pick up some items for her new home. Her parents accompanied her. Appellant was hostile and overbearing toward Mrs. Crawford, and he initially refused to let her take anything. Instead, he called the police. After the police arrived, appellant continued his hostile behavior, even though the police instructed him that he should allow Mrs. Crawford to take her things and asked him to calm down. At one point, appellant whispered something to Mrs. Crawford, and she asked appellant if he was threatening her. After the police left, when Mrs. Crawford said she wanted to take a particular table, appellant picked up the table and threw it across the room, breaking it.

Shortly after this incident, Mrs. Crawford went to the Prince William County Juvenile and Domestic Relations District Court (JDR court) and requested a preliminary protective order to prevent appellant from having contact with her. She signed an affidavit in which she described several incidents between her and appellant. The JDR court granted her

request for a preliminary protective order. On November 16, 2004, at the request of Mrs. Crawford, that protective order was dismissed.

During and after the time that the protective order was in effect, Mrs. Crawford continued to have contact with her husband. Prior to the dismissal of the protective order, Mrs. Crawford paid appellant's tuition for a trade school he wanted to attend. Between November 1 and November 18, 2004, the parties communicated by telephone on numerous occasions, with several of the phone calls lasting ten to twenty minutes. A call that Mrs. Crawford made to appellant in the late afternoon of November 18 lasted twelve minutes, and when Mrs. Crawford met her parents for dinner a short time later, she appeared "really very happy." Mrs. Crawford also called appellant twice on the morning of November 19.

On November 18, 2004, Mrs. Crawford informed her employer that she would be late to work the next morning but would arrive no later than 1:00 p.m. However, she never appeared for work on November 19, which her manager described as surprising. Also, before leaving work on November 18, 2004, she had a co-worker print a document for her because her printer was not working. That document was a statement for appellant's signature purporting to release Mrs. Crawford's father from any liability on the apartment lease Mrs. Crawford's father had co-signed for the two while they were still residing together.

Between 9:30 and 10:30 a.m. on November 19, a hunter discovered a box beside the road. Inside the box was an invoice listing Mrs. Crawford's employer and her workplace address. Mrs. Crawford's employer indicated he had given the box to her to mail earlier in the week. The location where the box was found was approximately twenty miles from Mrs. Crawford's workplace. The box had a small amount of Mrs. Crawford's blood on it. Late in the afternoon on the same day, a Manassas resident found Mrs. Crawford's cell phone in his driveway. The following day, Mrs. Crawford was not at her home when her date arrived to pick her up, as they had

previously arranged. When she did not answer the door, after several attempts, he left without seeing her. Mrs. Crawford's parents, who began worrying about their daughter, did not find anything out of place or unusual when they went into her home, except the cat's food and water bowls were empty. Mrs. Crawford's mother had last spoken to her daughter on the phone at about 10:00 p.m. on November 18, and when she entered Mrs. Crawford's apartment on November 21, she "knew" from the shape of the bed linens that Mrs. Crawford had slept in her bed the evening of November 18. On the nightstand beside the bed was a book titled in part, "Starting Over After an Abusive Relationship."

On November 22, 2004, the night manager of a Quality Inn in Charlottesville discovered Mrs. Crawford's body in one of the motel rooms. The room had been paid for by appellant for the night of November 19 to November 20, but no one had officially checked out of the room. Mrs. Crawford was lying on her back on the bed, naked and covered by bed linens. Her hands were folded over her abdomen, and her legs were in a "frog-like position." Although she had some bruising, the assistant medical examiner testified at trial that the marks did not look like "grab marks." There was no injury to her genitalia, although appellant's sperm was found in her vagina, and sperm from an undetermined source was found in or around her mouth and anus. No sperm was found on the bed or anywhere else in the room. The forensic scientist who examined the sperm taken from Mrs. Crawford's body could not determine its age.

A bloody motel towel was taped under Mrs. Crawford's right armpit, covering a fatal gunshot wound. The police did not find a gun or any clothing with a corresponding hole in the motel room. There was no gunshot residue on the body. The motel room did not contain any signs indicating that a struggle took place there, and nothing suggested that the shooting occurred in the room. Women's clothes and a purse containing Mrs. Crawford's identification were on the dresser, and a suitcase containing men's clothing and a pill bottle bearing appellant's name were also in the room. The television was

on, a "Do Not Disturb" sign was on the door, and the air conditioning had been set so that the room was cold. Police found appellant's fingerprint in the bathroom.

According to the assistant medical examiner, Mrs. Crawford was shot through the right side of her chest, so that the bullet passed through her right lung and then through her vertebra, severing her spinal cord and lodging in her back. Upon the severing of her spinal cord, Mrs. Crawford would have lost her ability to walk. The assistant medical examiner testified he could not say how long Mrs. Crawford would have lived after sustaining such an injury and that he "might expect [based on] anecdot[al evidence] that it might be minutes" but that it was possible she lived a "shorter" amount of time and also possible that she "survived an hour."

The motel's clerk testified at trial that appellant had driven into the parking lot of the Charlottesville Quality Inn at approximately 11:00 a.m. on November 19, 2004, and parked in the spot farthest from the front desk. He told the clerk that he had been driving all night and asked for a quiet room. He gave his name as Dale Crawford and paid with a $100 bill. He was driving Mrs. Crawford's car, which other evidence established actually belonged to her father.

On November 29, 2004, the police found appellant in Florida, still driving Mrs. Crawford's car. The drivers' side window of the car was broken out, and the driver's seat and rear seat had Mrs. Crawford's blood on them.[1] No blood was found on the front passenger's seat, and no evidence was presented at trial that any other bodily fluids were found in the car. A box of ammunition was in the trunk.

Appellant's cousin said that appellant arrived in Florida on November 22, 2004, said he was taking a vacation, and seemed happy. The cousin had not seen appellant in seventeen years and had received no advance notice that appellant was coming

---

[1]. The blood patterns in the car and the trajectory of the bullet through Mrs. Crawford's body suggest that she was sitting in the driver's seat and was shot by someone sitting in the front passenger's seat.

to visit. The driver's side window of Mrs. Crawford's car was broken when appellant arrived in Florida. Police were able to locate appellant in Florida after he contacted his daughter and asked her to wire him some money.

After appellant's apprehension in Florida, he gave a video-taped statement to police. He claimed Mrs. Crawford came to his home on the morning of November 19, 2004, and that they drove to Charlottesville for the weekend in an attempt to reconcile, a trip he said took one to one-and-one-half hours. Appellant said that Mrs. Crawford drove them to a Mc-Donald's in Charlottesville for breakfast. He claimed that, as they sat in the car in the parking lot, he threatened to shoot himself and held a loaded, cocked gun over his chest. He said that Mrs. Crawford reached over and grabbed the gun, that they wrestled over it, and that it discharged accidentally, hitting Mrs. Crawford. Appellant said he then moved his wife to the back seat of the car, where forensics technicians later found her blood, and drove to the motel where her body was later found. When asked whether she said anything after he shot her, he said she told him that she loved him. Other than appellant's claim that Mrs. Crawford made this one statement after she was shot, the record does not indicate that appellant made any statements about how long Mrs. Crawford lived after she was shot or whether she was alive when he moved her to the back seat of the car, drove her to the motel, or carried her into the motel room.[2]

Before trial, appellant objected to the introduction of the affidavit that Mrs. Crawford completed when she requested a preliminary protective order from the JDR court. Appellant

---

2. The quality of some portions of the digital recording of appellant's interview by Florida police were clear, and others were quite poor. At one point, investigators asked appellant how he knew Mrs. Crawford was dead. Although the trial court was not required to find appellant's statement on this or any other subject was credible, other than the medical examiner's testimony, appellant's statement was the only potential source of evidence concerning how long she lived after she was shot. Appellant's response during the recorded interview was either not discernible or was, "Cause I knew it," neither of which provides any evidence concerning how long she lived after being shot.

argued that the document was testimonial hearsay and, therefore, inadmissible under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The affidavit described several incidents when appellant had threatened or physically attacked Mrs. Crawford, including a detailed description of an alleged rape. The Commonwealth, which sought to admit the affidavit to prove the truth of the matters asserted therein, agreed that the affidavit was testimonial hearsay if admitted for that purpose, but it argued the trial court should apply the forfeiture-by-wrongdoing exception to the hearsay rule to avoid what would otherwise be a violation of appellant's confrontation rights. The Commonwealth argued this exception did not require that the trial court find appellant had killed his wife to prevent her from testifying, but instead required only a preliminary finding that appellant did kill her. The trial court ruled the affidavit was testimonial but was admissible under the forfeiture-by-wrongdoing exception to the hearsay rule, as explained by the Commonwealth, and, thus, that its admission did not violate appellant's confrontation rights.

Appellant also objected to the introduction into evidence of the statements that Mrs. Crawford made to her boss and a co-worker. Appellant argued that the statements were hearsay and, therefore, that they were not admissible under the state-of-mind exception to the hearsay rule. The trial court overruled appellant's motion to exclude this evidence and admitted the evidence under the state-of-mind exception.

## II. ANALYSIS

### A. THE AFFIDAVIT

#### 1. *Appellant's Confrontation Rights*

In ruling on appellant's motion to exclude the affidavit, the trial court held "it is clear, and the Commonwealth does not dispute, that these statements do fall within the scope of *Crawford*" because they are testimonial hearsay. On appeal, the Commonwealth contends the statements in the affidavit

were not testimonial and avers that this legal issue is subject to *de novo* review on appeal in spite of the prosecutor's concession below. *See generally Michels v. Commonwealth,* 47 Va.App. 461, 465, 624 S.E.2d 675, 678 (2006) (holding that whether statements are testimonial is a legal issue subject to *de novo* review).

We disagree. Whether or not the prosecutor took a position on this issue below, the trial court expressly ruled on the issue, holding the affidavit was testimonial but that its admission did not violate the Confrontation Clause because the forfeiture-by-wrongdoing doctrine applied. The Commonwealth had no right to appeal that ruling, and it would have had no right to appeal even if the trial court had excluded the affidavit on the grounds appellant alleged. *See* Code § 19.2–398. Thus, the Commonwealth also lacked the right to ask this Court to revisit that issue in appellant's appeal because to do so would "serve as a subterfuge for a constitutionally prohibited cross-appeal." *See White v. Commonwealth,* 37 Va.App. 658, 665, 561 S.E.2d 12, 16 (2002) (noting that although we may, under appropriate circumstances, "affirm the decision of the trial court when it has reached the right result for the wrong reason[,] ... 'the Commonwealth cannot use [this principle] as a subterfuge for a constitutionally prohibited cross-appeal' " (quoting *Driscoll v. Commonwealth,* 14 Va.App. 449, 452, 417 S.E.2d 312, 313 (1992))); *see also Hart v. Commonwealth,* 221 Va. 283, 289–90, 269 S.E.2d 806, 810–11 (1980).

■ We next consider whether the affidavit, although determined by the trial court to be testimonial when offered for the truth of its contents, was nevertheless admissible under forfeiture-by-wrongdoing principles. While this appeal was pending, the United States Supreme Court decided *Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008), reviewing the forfeiture-by-wrongdoing exception to the general prohibition on hearsay evidence, the Constitution's Sixth Amendment right to confront witnesses, and the application of *Crawford,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177.

During Giles's murder trial, the court allowed the jury to hear testimony about statements the decedent made to police officers when they responded to a domestic violence incident between Giles and the decedent a few weeks before the murder. *Id.* at ——, 128 S.Ct. at 2681–82, 171 L.Ed.2d at 494. The trial court admitted this evidence based on a California law that permitted "admission of out-of-court statements describing the infliction or threat of physical injury on a declarant when the declarant is unavailable to testify at trial and the prior statements are deemed trustworthy." *Id.* at ——, 128 S.Ct. at 2682, 171 L.Ed.2d at 494. The California Supreme Court found the law did not violate the Sixth Amendment's Confrontation Clause. *Id.*

On appeal to the United States Supreme Court, California conceded that the decedent's statements to the officers were testimonial, and the Supreme Court accepted "without deciding" that representation. *Id.* at ——, 128 S.Ct. at 2682, 171 L.Ed.2d at 494–95. The Supreme Court then considered "whether the theory of forfeiture by wrongdoing accepted by the California Supreme Court is a founding-era exception to the confrontation right" and, thus, allowed admission of the statements during Giles's murder trial without violating the Sixth Amendment. *Id.* at ——, 128 S.Ct. at 2682, 171 L.Ed.2d at 495. In this discussion, the Supreme Court noted:

> Not only was the State's proposed exception to the right of confrontation plainly not an "exceptio[n] established at the time of the founding," [*Crawford*, 541 U.S.] at 54, 124 S.Ct. 1354, [1365,] 158 L.Ed.2d 177; it is not established in American jurisprudence since the founding. American courts never—prior to 1985—invoked forfeiture outside the context of deliberate witness tampering.
>
> \* \* \* \* \* \*
>
> If the State's rule had an historical pedigree in the common law or even in the 1879 decision in *Reynolds [v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879)], one would have expected it to be routinely invoked in murder prosecutions like the one here, in which the victim's prior state-

ments inculpated the defendant. It was never invoked in this way. The earliest case identified by the litigants and amici curiae which admitted unconfronted statements on a forfeiture theory without evidence that the defendant had acted with the purpose of preventing the witness from testifying was decided in 1985. *United States v. Rouco*, 765 F.2d 983 ([11th Cir.1985]).

*Id.* at ——, 128 S.Ct. at 2687, 171 L.Ed.2d at 499–500. After reviewing the history of the common law and the forfeiture-by-wrongdoing exception, the United States Supreme Court held that the exception applies only where a defendant "engaged in conduct *designed* to prevent a witness from testifying," i.e., he "intended to prevent a witness from testifying." *Id.* at ——, 128 S.Ct. at 2683–84, 171 L.Ed.2d at 496–97. The Supreme Court found the California trial court committed constitutional error, infringing Giles's right of confrontation, by admitting the decedent's statements where no evidence suggested that Giles had killed the decedent to prevent her from testifying. *Id.* at ——, 128 S.Ct. at 2686–88, 171 L.Ed.2d at 498–501.[3]

Here, the Commonwealth concedes that appellant did not kill Sarah Crawford in order to prevent her from testifying, as California conceded in *Giles*. We accept the Commonwealth's concession and, thus, given the Supreme Court's holding in *Giles*, conclude the trial court committed constitutional error by admitting Mrs. Crawford's affidavit to prove the truth of its contents under an improper formulation of the concept of forfeiture by wrongdoing.

---

**3.** The concurring opinions in *Giles* do not disagree with the analysis of the majority regarding the forfeiture-by-wrongdoing doctrine as applied to testimonial documents. Justices Thomas and Alito wrote concurring opinions to note their disagreement with California's concession that the victim's statements were testimony. —— U.S. at ——, 128 S.Ct. at 2693–94, 171 L.Ed.2d at 506–07 (Thomas, J., concurring); *Id.* at ——, 128 S.Ct. at 2694, 171 L.Ed.2d at 507 (Alito, J., concurring). Justice Souter, with whom Justice Ginsburg joined, concurred in the majority's description of the exception, but noted that equity, rather than the historical record, defines the forfeiture-by-wrongdoing doctrine. *Id.* at ——, 128 S.Ct. at 2694–95, 171 L.Ed.2d at 507–08 (Souter, J., concurring).

## 2. *Harmless Error Analysis*

■ We next determine if the introduction of this evidence in violation of appellant's Sixth Amendment rights affected the jury's decision, i.e., if this error was harmless. *See Reid v. Commonwealth,* 213 Va. 790, 796, 195 S.E.2d 866, 871 (1973). We are mindful that:

> [t]he Supreme Court, in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, [828,] 17 L.Ed.2d 705 (1967), held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." As the Supreme Court stated in *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, [1436,] 89 L.Ed.2d 674 (1986), "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *See Neder v. United States,* 527 U.S. 1, [15–16,] 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999).
>
> A court, when determining whether federal constitutional error is harmless, must consider several factors, including the importance of the tainted evidence in the prosecution's case, whether the evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and, of course, the overall strength of the prosecution's case.

*Dearing v. Commonwealth,* 259 Va. 117, 123, 524 S.E.2d 121, 124–25 (2000). Errors are presumed harmful, and the Commonwealth bears the burden of proving that a constitutional error was harmless beyond a reasonable doubt. *See Chapman,* 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–11; *Joyner v. Commonwealth,* 192 Va. 471, 477, 65 S.E.2d 555, 558–59 (1951); *Beverly v. Commonwealth,* 12 Va.App. 160, 163, 403 S.E.2d 175, 177 (1991).

The affidavit in this case was prepared by an intake officer, pursuant to Code § 16.1–253.1, for use before the JDR court in support of Mrs. Crawford's request for an *ex parte* preliminary protective order that would prohibit contact between her

and appellant. Mrs. Crawford signed the typed document on November 1, 2004, swearing that it was "true and accurate to the best of [her] knowledge and belief." The affidavit described several incidents between the spouses that had occurred in the four months leading up to the murder.[4] The affidavit included an incident in which appellant threw Mrs. Crawford against a door and, when she tried to leave, he threw a glass at her and another incident in which he pushed her onto a couch and threatened her with his fist. The affidavit also described an incident during which appellant hit his wife three times with a belt, physically forced her to have sexual intercourse with him, "ripped the phone out of the wall" when she tried to call the police, and "put the sofa up against the door so [she] could not get out." The affidavit also mentioned an incident that occurred three days prior to her signing the affidavit, in which appellant "began ... throwing and breaking stuff" when Mrs. Crawford returned to the marital home with her parents to retrieve her belongings. The affidavit further included Mrs. Crawford's recollection that, two days prior to her signing the affidavit, appellant "called [her] and told [her] that [she] must want to die," that "he understands why husbands kill their wives," and that "he would find [her] and come to [her] work." The affidavit concluded, "I am afraid of Anthony. I fear he may physically hurt me or even kill me. I want him to stay away from me and my family."

### a. Rape Conviction

We hold that admission of the affidavit was not harmless beyond a reasonable doubt in relation to the rape conviction. Code § 18.2–61 defines rape, as relevant to these facts, as occurring when "any person has sexual intercourse with a complaining witness ... and such act is accomplished ... against the complaining witness's will, by force, threat or

---

4. The original affidavit included incidents that occurred prior to August 2004, but those incidents were redacted at the direction of the trial court before the document was presented to the jury.

intimidation." [5] Therefore, the Commonwealth had to prove two elements to convict appellant of rape: (1) that appellant and Mrs. Crawford had sexual intercourse and (2) that the act was against Mrs. Crawford's will through the use of force, threat, or intimidation.

The forensic scientist testified that sperm was found in Mrs. Crawford's vagina and that DNA testing established the sperm was appellant's. Therefore, the physical evidence proved the parties had sexual intercourse, and the admission of the affidavit as to this element of rape was harmless beyond a reasonable doubt.

However, the affidavit probably affected the jury's decision regarding Mrs. Crawford's *willingness* to engage in sexual intercourse. The affidavit contains Mrs. Crawford's sworn statement that appellant raped her on a prior occasion approximately three months before her death. The record contains no evidence other than the affidavit indicating that appellant had ever forced Mrs. Crawford to have sexual intercourse with him. The assistant medical examiner testified that she did not observe any injuries on Mrs. Crawford's body suggesting force had been used to effect sexual intercourse. Although Mrs. Crawford had some bruising to her upper body, the evidence failed to prove the age of those bruises or suggest how Mrs. Crawford became bruised. The physical evidence that force, threats, or intimidation were used to overcome the victim's will was not overwhelming, especially as the spouses could have engaged in sexual intercourse before Mrs. Crawford knew appellant had a gun.

In addition, some evidence suggested the spouses were attempting to reconcile. Mrs. Crawford was helping her husband with his education. She had asked for the dismissal of the protective order and had several telephone conversations with him that lasted ten to twenty minutes. After a

---

5. Although Code § 18.2–61 provides that sexual intercourse "through the use of the complaining witness's ... physical helplessness" also constitutes rape, the jury instructions in this case did not include this alternative element.

twelve-minute conversation with appellant on the afternoon of November 18, Mrs. Crawford met her parents for dinner and appeared very happy. Telephone records also suggest Mrs. Crawford called appellant twice on the morning of November 19, calls that appellant claimed she made while on her way to his residence to begin their reconciliation trip.

If the evidence had proved appellant had sexual intercourse with Mrs. Crawford in the car or the motel room after she was incapacitated by the gunshot wound, then perhaps the influence of the affidavit on the jury's decision would not be so important. However, no evidence suggested where or when they had intercourse. No sperm was found in the car or in the motel room. The forensic scientist could not determine the age of the sperm that was retrieved from Mrs. Crawford's body. Appellant made no statement to the police regarding having had sexual intercourse with his wife near the time of her death. Therefore, the Commonwealth did not prove that appellant had sexual intercourse with Mrs. Crawford against her will, through the use of force, threat, or intimidation.

Given the lack of other evidence and the specific allegation of rape contained in the affidavit, we conclude the admission of that document was not harmless beyond a reasonable doubt as to the rape conviction. *See Lilly v. Commonwealth,* 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) ("In making that determination [of harmless error beyond a reasonable doubt], the reviewing court must consider a host of factors, including the importance of the tainted evidence in the prosecution's case...."); *Young v. Commonwealth,* 47 Va.App. 616, 634, 625 S.E.2d 691, 700 (2006) (noting that the evidence of other crimes that was improperly admitted included several robberies, the crime for which Young was on trial), *rev'd on other grounds,* 273 Va. 528, 643 S.E.2d 491 (2007); *Boney v. Commonwealth,* 29 Va.App. 795, 801–02, 514 S.E.2d 810, 813 (1999) (discussing the factual similarity between the erroneously admitted evidence of Boney's prior bad acts and the appealed convictions).

Upon finding the constitutional error is not harmless, we next determine whether the evidence is sufficient to

support the conviction, as appellant raises the sufficiency of the evidence to prove rape in his appeal. If the evidence is insufficient, remanding for a new trial would violate double jeopardy principles, and we must reverse and dismiss the conviction rather than reverse and remand the conviction for a new trial. *Leybourne v. Commonwealth,* 222 Va. 374, 377, 282 S.E.2d 12, 14 (1981) (reversing and dismissing a conviction because mother's testimony was inadmissible and the evidence was insufficient to prove Leybourne's guilt beyond a reasonable doubt); *see Parsons v. Commonwealth,* 32 Va.App. 576, 529 S.E.2d 810 (2000) (citing *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978), and *Lockhart v. Nelson,* 488 U.S. 33, 40–42, 109 S.Ct. 285, 290–92, 102 L.Ed.2d 265 (1988), for the proposition that, in conjunction with a ruling that reversal is required because of improperly admitted evidence, a full sufficiency analysis is required because, "[i]f the evidence adduced at trial was insufficient to convict [the defendant], a remand for retrial would violate the Constitution's prohibition against double jeopardy"). "In making this assessment, we consider all admitted evidence," without regard for whether it was properly admitted or is likely to be admitted in any subsequent retrial. *Hargraves v. Commonwealth,* 37 Va.App. 299, 312–13, 557 S.E.2d 737, 743 (2002).

The evidence here, viewed under these standards, did not prove beyond a reasonable doubt that appellant committed rape.

It is well settled in Virginia that to justify conviction of a crime, it is not sufficient to create a suspicion or probability of guilt, but the evidence must establish the guilt of an accused beyond a reasonable doubt. It must exclude every reasonable hypothesis except that of guilt. The guilt of a party is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

*Cameron v. Commonwealth,* 211 Va. 108, 110–11, 175 S.E.2d 275, 276 (1970); *see Reese v. Commonwealth,* 230 Va. 172, 175,

335 S.E.2d 266, 268 (1985) ("The evidence gives rise to suspicion of guilt but it is not sufficient as a matter of law to establish guilt by the requisite standard of proof beyond a reasonable doubt."). Too many reasonable hypotheses of appellant's innocence on the charge of rape remain, even after reviewing all the evidence including the affidavit. *See Hargraves,* 37 Va.App. at 312–13, 557 S.E.2d at 743.

The evidence, viewed in the light most favorable to the Commonwealth, *see Hughes v. Commonwealth,* 18 Va.App. 510, 518, 446 S.E.2d 451, 456 (1994) (en banc) (noting the standard of review for sufficiency questions), did not prove where or when the sexual intercourse occurred. Although the affidavit supported a finding that appellant had raped his wife several months earlier while they were still living together, nothing in the record indicated appellant used force, threats, or intimidation at the time of the act of intercourse upon which his conviction for rape was based. In the week prior to the murder, Mrs. Crawford asked that the protective order be dismissed; she paid appellant's tuition; she called him several times; she printed a document for his signature; she took a half-day's leave from work; and she purchased gasoline near his home. The physical evidence did not exclude the possibility that the act was consensual as the medical examiner found no injuries to Mrs. Crawford's vagina. Because the examiner could not determine the age of the sperm samples collected from Mrs. Crawford's body, the Commonwealth could not exclude the reasonable hypothesis that the intercourse occurred well before the shooting and was consensual. Nothing found in the motel room, the car, or anywhere else suggested where or when appellant and his wife had sexual intercourse. Therefore, a reasonable hypothesis existed that the intercourse occurred prior to the shooting, when Mrs. Crawford may have been a willing participant. Therefore, we reverse and dismiss the rape conviction.

### b. Abduction with Intent to Defile Conviction

To convict appellant of abduction with the intent to defile, the Commonwealth needed to prove both that he inten-

tionally abducted Mrs. Crawford by "depriv[ing] his victim of her liberty," *Brown v. Commonwealth*, 230 Va. 310, 314, 337 S.E.2d 711, 714 (1985), and that he committed this act with the intention to sexually molest her,[6] *see Scott v. Commonwealth*, 228 Va. 519, 525 n. 2, 323 S.E.2d 572, 576 n. 2 (1984). *See* Code § 18.2–48. Here, the affidavit contained information relevant to determining both whether appellant deprived his wife of her liberty and whether he intended to sexually molest her. After examining the record, we conclude that admission of the affidavit was not harmless beyond a reasonable doubt regarding either the underlying abduction or the intent to defile.

As to proof of the underlying abduction, the evidence established Mrs. Crawford spoke with appellant on the telephone for about ten minutes on the afternoon of Thursday, November 18, before having dinner with her parents and going home to her residence. Additional evidence indicated that Mrs. Crawford may have planned to meet with appellant on the morning of Friday, November 19, to get him to sign a statement releasing her father from any liability on the lease Mrs. Crawford's father had co-signed for the two while they were still residing together. Before leaving her job on the afternoon of November 18, Mrs. Crawford had one of her co-workers print the statement for her because the printer attached to her computer was not working, and Mrs. Crawford said she was taking personal leave the next morning but would arrive at work no later than 1:00 p.m. to disburse company funds to another co-worker who was leaving town on business. Phone records indicated that Mrs. Crawford made two brief calls from her cell phone to appellant's home phone on the morning of November 19, one at 7:52 a.m. and a second one at 8:52 a.m., and credit card information indicated she purchased gasoline in the vicinity of appellant's residence shortly before that second telephone call. Additional evidence supported a

---

**6.** Under *Fitzgerald v. Commonwealth*, 223 Va. 615, 632, 292 S.E.2d 798, 808 (1982), "defile" and "sexually molest" are "interchangeable within the meaning of" abduction with intent to defile.

finding that Charlottesville was a sixty- to ninety-minute drive from appellant's residence in Manassas, permitting the inference that, if Mrs. Crawford was not shot until reaching Charlottesville as appellant claimed, she could willingly have chosen to drive to Charlottesville and back with appellant and still have returned to her job by 1:00 p.m. as she had promised. Although the evidence tended to indicate Mrs. Crawford had not planned to spend the weekend with appellant in Charlottesville, the evidence other than the affidavit did not compel a finding that her trip with him was against her will, and the affidavit could have impacted the jury's finding regarding whether she willingly drove him to Charlottesville.

Assuming the evidence concerning the box with traces of Mrs. Crawford's blood on it that was found by the side of the road near Manassas between 9:30 and 10:30 a.m. would have been sufficient to establish appellant shot Mrs. Crawford while they were still in the Manassas area and then drove her to Charlottesville, the Commonwealth's evidence also did not compel a finding that appellant abducted Mrs. Crawford before or after the shooting. The evidence indicated appellant was without a car of his own at that time, permitting the inference that Mrs. Crawford, who went willingly to appellant's home that morning, might also willingly have agreed to take him on an errand before she was shot. The evidence also did not compel a finding that appellant abducted Mrs. Crawford after she was shot because no evidence in the record established how long she lived after being shot. Instead, the assistant medical examiner testified he could not say how long Mrs. Crawford would have lived after sustaining such an injury and that he *"might* expect [based on] anecdot[al evidence] that it *might* be minutes" but that it was *possible* she lived a "shorter" amount of time and also *possible* that she "survived an hour." (Emphases added.) Thus, no evidence compelled a finding that appellant's pulling Mrs. Crawford's body into the back seat, driving her to the motel, or moving her inside the motel constituted a deprivation of her liberty necessary to prove abduction.

The improperly admitted affidavit, moreover, contained Mrs. Crawford's sworn statements that appellant had used force and violence against her on previous occasions and that he had previously abducted her in conjunction with the same incident in which he had raped her while they still resided together, ripping the telephone out of the wall when she attempted to call the police and barricading a door in their home so that she could not get out. Thus, we conclude that the erroneous admission of the affidavit was not harmless beyond a reasonable doubt as to the underlying abduction.

The introduction of the affidavit also was not harmless as to the intent element of abduction with intent to defile because, as discussed above, *see supra* Section II(A)(2)(a), the affidavit provided the jury with the only evidence of sexual misconduct. Although the physical evidence proved appellant had sexual intercourse with Mrs. Crawford, the physical evidence did not prove that contact was unwanted. *See Scott,* 228 Va. at 525, 323 S.E.2d at 576 (noting that the intention to persuade someone to have sexual intercourse is not the equivalent of the intent to defile). We conclude that introduction of the affidavit was not harmless beyond a reasonable doubt in its effect on the jury's consideration of the underlying abduction or the intent to defile element.

■ We now conduct the necessary double jeopardy analysis by examining the sufficiency of all the evidence, including the erroneously admitted affidavit, to support the conviction for abduction with intent to defile. We hold that all the evidence, viewed in the light most favorable to the Commonwealth, was insufficient to prove appellant abducted Mrs. Crawford or acted with an intent to defile. The fact that appellant had raped and abducted Mrs. Crawford on a prior occasion in the apartment they shared did not prove that he abducted her or acted with an intent to defile her on this occasion, and the remaining evidence failed to exclude the reasonable hypothesis that she willingly engaged in sexual intercourse with him and that he did not engage in any acts that deprived her of her personal liberty. Therefore, we

reverse and dismiss the conviction for abduction with intent to defile. Because the evidence fails to prove abduction, we also reverse and dismiss the conviction for use of a firearm during the commission of an abduction.

### c. Capital Murder Conviction

 The jury, in finding appellant guilty of capital murder, indicated that it believed appellant killed Mrs. Crawford while in the commission of abduction with intent to defile and in the commission of rape. Based on the foregoing analysis, however, we have reversed both these predicate offenses. *See supra* Sections II(A)(2)(a) & (2)(b). Therefore, admission of the affidavit clearly was not harmless as to the capital murder conviction. We thus reverse appellant's conviction for capital murder and the concomitant use of a firearm in the commission of murder, and we remand for retrial on the lesser-included offense of first-degree murder and the related firearm offense if the Commonwealth be so advised. *See Britt v. Commonwealth,* 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008). Because appellant challenges the sufficiency of the evidence to prove only rape and abduction with intent to defile, the offenses used to elevate the charge of first-degree murder to capital murder, and does not challenge the sufficiency of the evidence to prove the underlying murder or concomitant use of a firearm, we need not consider the sufficiency of the evidence to prove first-degree murder and use of a firearm before remanding for a new trial on these offenses.

### d. Grand Larceny Conviction

 Appellant's conviction for grand larceny required proof that he "wrongful[ly] or fraudulent[ly] [took] ... another's property [valued at $200 or more] without [the owner's] permission and with the intent to deprive the owner of that property permanently." *Tarpley v. Commonwealth,* 261 Va. 251, 256, 542 S.E.2d 761, 763–64 (2001). The erroneously admitted affidavit contained no information directly relevant to appellant's conviction for grand larceny, and independent

evidence proved appellant stole the car. Appellant was found in possession of the vehicle and admitted in his statement to the police that he drove it to Florida. Mrs. Crawford's father, who actually owned the car, testified he had purchased the car for his daughter, not appellant. We find the error in admitting the affidavit was harmless beyond a reasonable doubt with regard to the grand larceny conviction, and therefore, we affirm this conviction.

## B. THE CO-WORKERS' TESTIMONY

Around the time that appellant and his wife separated, Mrs. Crawford asked a co-worker for tickets to a soccer game. The co-worker testified at trial that Mrs. Crawford said she intended to give the tickets to appellant "because [Mrs. Crawford] plan[ned] on moving out. She didn't want him there while she was moving out—afraid of an incident." Appellant objected to the introduction of this testimony, but the trial court ruled it was admissible.

Mrs. Crawford's boss testified that she showed him "a court protective order against appellant," which "wasn't a surprise" to him given their history. Her boss also explained that Mrs. Crawford chose to have her desk in the busy foyer of their office because she wanted to be able to see out a window and observe the parking lot, so that she would know "whether [appellant] was coming in the parking lot or not." Mrs. Crawford also expressed "concern[ ] for her well-being staying in the apartment" with her husband. When she finally moved out, she moved to a home with a long driveway, so that she could see anyone coming to her house, and she took different routes from her office to her new home, she explained to her boss. Appellant objected to this testimony, and the trial court overruled the objection.

Appellant argues that none of this testimony was admissible under the state-of-mind exception to the hearsay rule. We disagree. "The key to admissibility of evidence showing a victim's state of mind is ... its relevance to a material issue in the case." *Hodges v. Commonwealth,* 272

Va. 418, 436, 634 S.E.2d 680, 690 (2006) (noting that state-of-mind hearsay evidence is not limited to situations where "the accused has alleged [a] killing was the result of accident, self-defense, or suicide" and that "a spectrum of victim declarations are admissible [under the state-of-mind exception] based on relevance and probative value to a material fact"). The testimony of Mrs. Crawford's co-worker and her boss regarding her feelings about appellant and her fear of him was relevant both to rebut appellant's claim that the shooting was accidental and to address whether Mrs. Crawford would willingly accompany or travel with appellant or agree to have sexual relations with him. Therefore, the testimony of her boss and her co-worker was admissible for the purpose of proving Mrs. Crawford's state of mind about appellant and their relationship, and the trial court did not err in denying appellant's motion to exclude this evidence.[7]

### III.

For these reasons, we hold the trial court did not err in admitting the testimony of the victim's boss and co-worker for the purpose of showing the victim's state of mind. However, we hold the trial court erred in admitting the challenged affidavit to prove the truth of its contents. We hold further that this error was harmless only in relation to the grand larceny conviction. As a result, we reverse appellant's convictions except the one for grand larceny, which we affirm. As to the convictions for rape, abduction with intent to defile, and use of a firearm in the commission of abduction, we hold the evidence including the improperly admitted affidavit was insufficient to prove these offenses. Thus, we dismiss the indictments for rape, abduction with intent to defile, and use of a firearm in the commission of abduction. Because we reverse and dismiss the convictions for rape and abduction with intent to defile, which provided the basis for convicting appellant for capital murder rather than first-degree murder,

---

7. Appellant does not argue that these statements were testimonial; nor does he argue that *Crawford* should apply to this evidence.

appellant may not be retried for capital murder, but because appellant does not challenge the sufficiency of the evidence to prove the underlying murder, we remand for retrial on an offense no greater than first-degree murder without considering the sufficiency of the evidence to prove this offense. For the same reason, we remand for retrial appellant's conviction for use of a firearm in the commission of murder.

*Affirmed in part, reversed and dismissed in part, and reversed and remanded in part.*

BEALES, J., concurring, in part, and dissenting, in part.

I concur with the majority's holding that the trial court erred in using the forfeiture by wrongdoing doctrine to admit Mrs. Crawford's affidavit for the truth of the matters asserted therein, given the United States Supreme Court's recent holding in *Giles v. California,* —— U.S. ——, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008). I also concur with the majority's holding that the trial court did not err in admitting the statements of Mrs. Crawford's co-workers under the state-of-mind exception to the hearsay rule, *see Clay v. Commonwealth,* 262 Va. 253, 257–58, 546 S.E.2d 728, 730 (2001). However, I disagree with the majority's sufficiency analysis, and, therefore, I dissent in part from the majority opinion.

I concur with the majority's resolution of the issues related to the grand larceny,[8] rape,[9] capital murder,[10] and use of a

---

8. Nothing in the affidavit mentioned automobiles or theft, and appellant did not argue that the evidence was insufficient to prove that he stole his father-in-law's car.

9. The affidavit clearly alleged a previous rape several months before the murder, which constituted inadmissible evidence of the same crime with which appellant was charged, and the evidence in the record was also insufficient to prove beyond a reasonable doubt that the sexual intercourse between appellant and the victim that apparently occurred on November 19, 2004, was not consensual.

10. I agree with the majority that both the rape and abduction with intent to defile convictions are not supported by the evidence in the record. As these convictions form the statutorily mandated predicate offenses for the capital murder conviction, we cannot remand for retrial

firearm in the commission of a murder convictions. I also agree that admission of the affidavit for the truth of the matters asserted therein was not harmless error in relation to the abduction with intent to defile conviction because the affidavit could have influenced the jury's decision on that conviction. However, unlike the majority, I would reverse and remand the abduction with intent to defile conviction, as well as the related firearm charge, for retrial on the lesser-included offense of simple abduction, rather than dismiss this conviction. Therefore, although I concur in other respects, I respectfully dissent from the majority opinion on the abduction conviction and the related conviction for use of a firearm during the commission of an abduction.

## ANALYSIS

Appellant was convicted of abduction with intent to defile. As the majority found, admission of the affidavit into evidence for the truth of the matters asserted therein violated appellant's constitutional right to confront the witnesses against him, and, given the standard set by the United States Supreme Court for harmless error involving a constitutional issue, *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967), that error was not harmless. Therefore, the conviction for abduction with intent to defile must be reversed. *See Dearing v. Commonwealth,* 259 Va. 117, 123, 524 S.E.2d 121, 124–25 (2000). If appellant had not also argued that the evidence was insufficient to prove he committed abduction with intent to defile, then we would simply remand the abduction with intent to defile conviction for a new trial. *See, e.g., Owens v. Commonwealth,* 216 Va. 315, 218 S.E.2d 530 (1975) (finding a certificate of analysis was improperly admitted into evidence and reversing and remanding for retrial on the original charge "if the Commonwealth be so advised"). However, appellant does argue that the evi-

---

on capital murder, although we can remand the use of a firearm *in the commission of a murder* conviction for a new trial. Therefore, I agree that appellant must have a new trial on the lesser-included offense of first-degree murder, if the Commonwealth be so inclined.

dence was insufficient to prove his abduction with intent to defile conviction. Therefore, this Court must examine the sufficiency of the evidence here to determine whether the conviction should be dismissed or remanded for a new trial.

While I agree with the majority that the evidence, viewed under the traditional sufficiency standards of deference to the fact finder and examining the evidence in the light most favorable to the Commonwealth, would not support the *intent* element of the crime of abduction *with intent to defile,* I disagree with the majority's conclusion that the evidence was also insufficient to prove the act of simple abduction. Instead, I would find that the evidence was sufficient to support a conviction for the lesser-included offense of simple abduction, and so this charge should be remanded for retrial along with the associated firearm charge.

As this Court has explained previously:

The consistent practice in Virginia, when the evidence is found insufficient to sustain a felony conviction on appeal, but sufficient to sustain a conviction on a lesser-included misdemeanor offense, has been to remand the case for retrial on the lesser-included offense.

This practice is consistent with case law from other jurisdictions that holds that a post-trial finding of insufficient evidence to support a conviction requires an acquittal only as to the greater charge for which the evidence was insufficient, but does not require acquittal of a lesser-included offense adequately supported by the evidence.

*Gorham v. Commonwealth,* 15 Va.App. 673, 678–79, 426 S.E.2d 493, 496–97 (1993) (citations omitted). In reviewing the sufficiency of the evidence here, we should examine *all* of the evidence, including the affidavit, in the light most favorable to the Commonwealth. *Hargraves v. Commonwealth,* 37 Va.App. 299, 312–13, 557 S.E.2d 737, 743 (2002) ("[W]e consider all admitted evidence, including illegally admitted evidence," when assessing the sufficiency of the evidence on appeal.).

The majority's discussion of the act of abduction focuses on the evidence regarding Mrs. Crawford's intention to meet her estranged husband on the morning of November 19th. The evidence does support a conclusion that, initially, Mrs. Crawford willingly met with appellant that morning. However, that evidence does not prove that Mrs. Crawford willingly and voluntarily continued to stay with her husband that morning. In fact, additional facts in the record prove that, while they were together, the situation changed, and appellant then abducted Mrs. Crawford.

Appellant told the police that his reason for meeting his wife was to reconcile with his wife. However, Mrs. Crawford clearly did not have the same intention. The affidavit, the preliminary protective order, and the testimony of her co-workers and her parents proved that Mrs. Crawford was not interested in reuniting with her husband. *See Hodges v. Commonwealth*, 272 Va. 418, 436–37, 634 S.E.2d 680, 689–90 (2006) (discussing the relevance of a victim's state of mind); *Elliot v. Commonwealth*, 30 Va.App. 430, 437–38, 517 S.E.2d 271, 275 (1999) (discussing state of mind). Although she asked the JDR court to dismiss the protective order, nothing in the record suggests that, by withdrawing her request for a protective order, Mrs. Crawford had forgiven her husband for all of his abuse and now wanted to reconcile with him. Many other explanations exist for the refusal to go forward with a permanent protective order. Here, although appellant alleged in his statement that they were meeting to attempt a reconciliation, the Commonwealth's evidence proved Mrs. Crawford apparently wanted to meet with her estranged husband to obtain his signature on a form that freed her father from liability on their apartment's lease, creating the strong inference that she did not intend to move back into that apartment.

Appellant had made threats and committed acts of violence against Mrs. Crawford. She was afraid that he would kill her, based on statements she included in the affidavit. Appellant himself apparently felt so unsure about their alleged reconciliation that he took a loaded gun with him when they met on the morning of November 19th. Although appellant packed a

suitcase and took it with him to the motel, the motel room contained none of Mrs. Crawford's luggage—only her purse. Nothing in the room suggested she intended to go away for the weekend with her estranged husband. In fact, she had told her employer that she expected to be at work by 1:00 that afternoon, and she had a date with another man the next evening. Based on the evidence here, the jury could reject appellant's statement to the police that the spouses intended to reconcile and instead could have believed that he was lying to the police.

In addition, appellant's actions after shooting his wife support the jury's conclusion that appellant abducted his wife. After shooting her, instead of going into the McDonald's where he alleged the shooting occurred and asking for help, appellant removed Mrs. Crawford from the driver's seat of her car and placed her in the back seat. He then drove her away from the scene of the shooting. He did not take Mrs. Crawford directly to a hospital or to a doctor, although her desperate need for medical attention was obvious. He contacted no medical personnel or anyone else who might have been able to help her. Instead, he threw her cell phone out of the car, and he then drove to a motel in Charlottesville, preventing her from contacting anyone who might have been able to help her.

Appellant admitted to the police who arrested him in Florida that he took Mrs. Crawford to a motel and left her there alone after the shooting. At that point, according to the assistant medical examiner, Mrs. Crawford could not move her body due to the severing of her spine. Given that appellant admitted that he shot her—and Mrs. Crawford's urgent need for medical attention—the evidence proved overwhelmingly that Mrs. Crawford did not willingly leave the scene of the shooting to go with appellant to a motel. Viewed in the light most favorable to the Commonwealth, the evidence supports the jury's finding that appellant abducted his wife.

The majority opinion finds the timing of Mrs. Crawford's death is relevant to our review of the evidence of abduction on appeal. However, in his arguments to this Court, appellant

has never argued that Mrs. Crawford died before they arrived at, or even started driving to, the motel. His entire argument on appeal regarding the sufficiency of the evidence to prove abduction rests upon his allegation that Mrs. Crawford was with him willingly; he makes no claim that she died before any asportation of her occurred. Therefore, I would not address the timing of Mrs. Crawford's death in our discussion of the sufficiency of the evidence here. *See* Rule 5A:18.

However, as the majority does address the timing of Mrs. Crawford's death, I do note various facts upon which the jury could rely to find Mrs. Crawford did not die instantly after the shooting. First, the medical examiner testified that Mrs. Crawford could have lived for up to an hour after she was shot, although he also said that she might have lived only a few minutes. As appellant testified that the shooting occurred in Charlottesville, the medical expert's testimony could support the conclusion that Mrs. Crawford was alive when they reached the motel, which was also in Charlottesville.[11] In addition, appellant told the police that his wife talked to him after the shooting, although he did not indicate more specifically when she spoke to him. Also, appellant apparently attempted to minister to Mrs. Crawford once they were in the motel room—something he would be unlikely to do if she were already dead. Appellant put her on the bed, undressed her, and put a make-shift dressing on the gunshot wound. Even if Mrs. Crawford was not alive when they reached the motel, I would find that, once appellant shot her and she was in need of medical attention, the evidence is sufficient to conclude that Mrs. Crawford did not want to take a drive to a motel in Charlottesville with the man who had just shot her and, therefore, she was abducted at the point that he drove her away from the scene of the shooting. Therefore, I would find

---

11. The exact location of the shooting is not known. The physical evidence suggested that it occurred somewhere in or near Manassas, but appellant in his statement claimed it happened in Charlottesville. No evidence was presented to prove where the car was parked when the shooting occurred. Therefore, the actual distance between the scene of the shooting and the motel is unknown.

that the evidence was sufficient to prove that Mrs. Crawford was alive when appellant, the man who shot her, forced her into the back seat of the car and then, instead of taking her to a hospital or getting some assistance anywhere, drove her away from the scene of the shooting and any possible medical assistance to a motel in Charlottesville, thereby committing abduction of Mrs. Crawford.[12]

Finally, I find it appropriate to comment on the conclusion reached here, and in the majority opinion, that various convictions be remanded for retrial on lesser-included offenses, rather than simply remanding these convictions for resentencing on the lesser-included offenses. Based on the Virginia Supreme Court's recent decision in *Britt v. Commonwealth*, 276 Va. 569, 667 S.E.2d 763 (2008), we cannot simply remand for resentencing, as was done in *Commonwealth v. South*, 272 Va. 1, 630 S.E.2d 318 (2006), because the parties here did not concur in asking this Court for a remand for resentencing of the abduction with intent to defile conviction on the lesser-included offense of simple abduction (or for a remand for resentencing of the capital murder conviction on the lesser-included offense of first-degree murder). Therefore, as directed by the Supreme Court in *Britt*, I believe the appropriate result here is to remand the abduction with intent to defile conviction to the trial court for a new trial on the lesser-included offense of simple abduction and for retrial on the attending conviction for the use of a firearm in the commission of an abduction, if the Commonwealth be so advised. I also concur in the majority opinion's remand of the capital murder conviction for retrial on the lesser-included offense of first-degree murder and for retrial on the related use of a firearm

---

**12.** The indictment charged appellant with use of a firearm in the commission of an abduction, not with use of a firearm in the commission of an abduction with intent to defile, and the relevant jury instruction likewise defined the crime as use of a firearm in the commission of an abduction. The final order states that appellant was convicted of use of a firearm in the commission of an abduction. Therefore, as the predicate offense, i.e., an abduction, was proven, I would not dismiss this conviction.

in the commission of a murder conviction, if the Commonwealth be so advised.

## CONCLUSION

For the foregoing reasons, I respectfully concur in part and dissent in part from the majority opinion.