# COURT OF APPEALS OF VIRGINIA

Present: Judges Friedman, White and Senior Judge Humphreys[*]
Argued at Christiansburg, Virginia

JEUAN FONTAI WARD

v.      Record No. 1664-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[**] BY
JUDGE KIMBERLEY SLAYTON WHITE
APRIL 9, 2024

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

David L. Scyphers (Scyphers & Austin, P.C., on brief), for
appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a jury trial, Jeuan Fontai Ward was found guilty of two counts of distributing

cocaine under Code § 18.2-248(C). The trial court denied Ward's two post-trial motions. On this

appeal, Ward asserts that his statutory and constitutional rights to a speedy trial were violated, that

the Commonwealth failed to establish sufficient chain of custody to admit the certificates of analysis

of the cocaine, that the Commonwealth violated his due process rights because of a flawed and

highly suggestive identification process used by the police, and that the evidence presented was

insufficient to convict. This Court upholds appellant's convictions.

---

[*] Senior Judge Humphreys participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2023. On April 1, 2024, he was designated as a senior judge.

[**] This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

Timeline

On May 18, 2020, a grand jury indicted Jeuan Fontai Ward for two counts of distributing

cocaine under Code § 18.2-248(C).  He was arrested on February 24, 2021, on both counts.

Ward was held in jail continuously until the trial on August 24, 2022.

The initial trial date was May 28, 2021.  On May 27, 2021, Ward requested a continuance

to enter a "late plea."  His motion was granted, and he agreed to waive his statutory and

constitutional rights to a speedy trial.  Trial was then set to August 18, 2021.[1]

On August 13, 2021, Ward requested a continuance to proceed with a jury trial because

although he had previously been "amenable to the plea agreement," he informed his counsel

"that he now desire[d] a jury trial" and "directed that counsel file additional motions."  The trial

court granted the continuance and Ward again waived his statutory and constitutional speedy

trial rights.  The trial was set for December 3, 2021.[2]

In November of 2021, there was a hearing on defense counsel's motion to withdraw due

to a "complete breakdown in the attorney-client relationship" and due to Ward directing counsel

to "file various motions that counsel, in his belief, [wa]s ethically precluded from pursuing."

Since Ward requested to attend the hearing on the withdrawal request in person, instead of by

video as he was during the hearing, the trial court continued the hearing to December 3, 2021, so

that Ward could be present in person.  On December 3, 2021, defense counsel's motion to

withdraw was granted and new counsel was appointed.  The trial court overruled Ward's

---

[1] The trial court entered the order on June 1, 2021.  This order notes defendant's waiver but does not mention the Supreme Court of Virginia's Order of Judicial Emergency in Response to the COVID-19 Emergency.  At the time, statutory speedy trial provisions were tolled by the Supreme Court's order.

[2] The trial court entered the order on September 27, 2021.

objection to a continuance of his trial date to give Ward's new counsel adequate time to prepare for trial. A new trial date was set to January 14, 2022, and the subsequent order stated that "[s]peedy trial shall be held in abeyance pursuant to this order and [the] Supreme Court of Virginia['s] Order of Judicial Emergency in Response to [the] COVID-19 Emergency."

In January of 2022, Ward's second counsel filed a motion to withdraw for a potential conflict of interest.[3] This motion was noticed for a hearing on January 4, 2022. Although there is no transcript of that hearing filed, the trial court entered an order noting that the defendant waived any potential conflict of interest and denied counsel's motion to withdraw.[4]

Also, there is a question of whether the Commonwealth's motion to continue the case from the January 14, 2022 trial date was addressed at a January 2022[5] hearing. However, there is no transcript of that hearing filed. The Commonwealth's motion asserted that Ward had pending charges in a nearby jurisdiction where the trial court had ordered Ward to complete a psychological evaluation. The motion requested that the matter "be continued until such time as sanity has been determined." The trial court entered an order granting the continuance request, noting Ward's objection to it.[6] The order also stated that "[s]peedy trial shall be held in abeyance pursuant to this order and [the] Supreme Court of Virginia['s] Order of Judicial Emergency in Response to [the] COVID-19 Emergency." The order stated that the matter would "be reset for [a] jury trial after the competency evaluation [wa]s returned."

The next hearing date scheduled before the trial court was on March 10, 2022. Again, no transcript of that hearing is filed. However, the trial court entered an order stating that Ward had

---

[3] Counsel's former law partner was prosecuting Ward in the City of Bristol, Virginia.

[4] Order entered on March 7, 2022.

[5] The hearing was noticed for January 7, 2022.

[6] Order entered on March 10, 2022.

"refused to cooperate" with the psychological evaluation ordered by the nearby jurisdiction "for competency to stand trial."[7]  The order of the trial court also denied defense counsel's motion for Ward to be evaluated for competency in Washington County and continued the matter for a jury trial on May 23, 2022.

On May 4, 2022, defense counsel filed another motion to withdraw asserting that Ward "continues to insist on [c]ounsel to violate Rule 3.1 of the Rules of Professional Conduct" and that Ward "continues to request [c]ounsel take actions outside those required under Rule 1.2 of the Rules of Professional Conduct."  This time the trial court granted the motion and assigned Ward new counsel.[8]  The jury trial remained as scheduled on May 23, 2022.

On May 20, 2022, the parties jointly moved to continue the matter until June 17, 2022, due to defense counsel's recent appointment and due to counsel's unexpected medical issues. The motion noted that Ward waived his speedy trial rights only as to that continuance period. The trial court entered an order continuing the matter on the motion of Ward, "there being no objection by . . . the Commonwealth" to the agreed upon date.[9]

On June 9, 2022, the parties jointly moved again to continue the case because the Commonwealth's expert witness from the Department of Forensic Science was unavailable and because defense counsel had surgery scheduled for June 17, 2022.  The motion was granted, and

---

[7] Order entered on April 18, 2022.

[8] Order entered on May 19, 2022.

[9] Order entered on May 31, 2022.

the trial was set for August 24, 2022.[10]  The order specified that the "time period shall not count against the Commonwealth for purposes of speedy trial computation," citing Code § 19.2-43(4).[11]

Before trial, Ward filed a motion to dismiss alleging a violation of his statutory right to a speedy trial.  At argument, defense counsel clarified that the motion also was based upon Ward's constitutional right to a speedy trial.  Denying Ward's motion, the trial court found that when a defendant creates a reason for continuance,[12] he cannot then complain of a speedy trial violation. The trial court found that Ward was served with "the capias on February 24[], 2021"; that the trial date was continued by "agreed order" to August 18, 2021 and then later to December 3, 2021; that initial trial counsel was allowed to withdraw and that a continuance to January 14, 2022 was necessary for Ward to have a fair trial with new and prepared counsel; that Ward failed to cooperate with a psychological exam; that Ward had "been through three lawyers"; and, lastly, that despite Ward's claim that he did not endorse one of the continuance orders, "an officer of the court wouldn't have submitted a signature that was not the defendant's."  No further continuances were granted.  The trial was held on August 24, 2022.

Underlying Facts

R.H. was a confidential informant who worked for the Washington County Sheriff's Office.[13]  She was usually given $100 to complete her buys as a confidential informant as well as $100 as a "standard confidential informant fee" after the buy.  Detective Noah Horn was R.H.'s

---

[10] Order entered on June 13, 2002.

[11] This citation appears to contain a typographical error and should be to Code § 19.2-243(4).

[12] The trial judge specifically notes that "the defendant has been through three lawyers. Has failed to cooperate with a psych exam."

[13] We refer to the confidential informant by her initials to afford her privacy.

contact at the Sheriff's Office. On January 11, 2019, R.H., after receiving a call from an unknown number, contacted Detective Horn about her making a "possible drug buy" from a man identified as "Cheese." R.H. met Detective Horn, who searched her, her car, and her purse.[14] Finding no contraband, cameras were placed in her vehicle and in her purse. R.H. then called "Cheese," and they met at a Walmart. "Cheese" arrived in a "little red car," and R.H. handed him $100, and "Cheese" "handed [her] a hundred dollars' worth of crack." The transaction's video recording was played for the jury, without objection. Detective Horn observed the transaction and ran "Cheese's" vehicle registration on the scene. R.H. met up with Detective Horn after the buy. Detective Horn secured the cocaine in an evidence envelope in his car and subsequently took it to the Sheriff's Office and secured it in the evidence locker. At the trial, Detective Horn testified that evidence technician Brenda Lloyd submitted the cocaine to the lab.

R.H. did another buy from "Cheese" on January 14, 2019. Detective Horn again searched R.H.'s person and car before the buy and then observed the hand-to-hand transaction. The transaction was also video recorded. After the buy, Detective Horn submitted the substance to the evidence locker and Lloyd submitted it to the lab.

Between the first and second buys, Detective Horn ran information on the "little red car" through DMV databases. Through that information, he was able to secure a photograph of Ward. Detective Horn testified that he showed the single photograph to R.H. who identified it as being of the person she bought drugs from on January 11. Immediately after that testimony, Ward objected to the identification arguing that it was suggestive and an improper out-of-court identification. The trial court sustained the objection.

---

[14] Detective Horn testified that "[i]f we found any type of controlled substance in the search, we would automatically discontinue that purchase for that day."

Initially, defense counsel objected to R.H.'s in-court identification of Ward as being "Cheese."[15]  However, after a few more questions, R.H. was permitted to make the in-court identification.  Later, without objection, the video recording of the transaction was played for the jury.  R.H., without objection, identified the man captured in the video recording as "Cheese" during the first buy.  R.H. also testified, without objection, that "Cheese" was the same person she had identified as Ward in court.  The trial court also admitted a photograph of "Cheese," and R.H. identified him as the person with whom she made the drug deal, all without objection.

R.H. again identified Ward in court as the person she received the drugs from during the second buy from "Cheese."  The defense attorney objected by simply stating, "[s]ame objection." The trial court responded, "[b]ased on the same objection.  The court will so note the identification."  Again, without objection, the video recording of the second transaction was played for the jury, and R.H. identified Ward as being depicted in it.  Also admitted without objection was a photograph that R.H. identified as being one of Ward.

Detective Horn identified Ward as the person who he saw approach R.H.'s car during the buys and the person that he ran the vehicle registration for.  The only stated objection by Ward to the identification was "[m]y same objection previously stated to the other witness."  Later, in response to a defense question, Detective Horn stated that he had seen Ward again, involved in another "transaction [that] ended up going to Bristol."

Lloyd, the evidence technician that Detective Horn testified submitted the cocaine to the lab, did not testify during the trial.  Instead, David Bise, the then-current evidence custodian for the Washington County Sheriff's Office at the time of the trial, testified about procedures followed by the Sheriff's Office when receiving evidence and submitting it for analysis.  Bise

---

[15] Ward objected to the in-court identification stating that R.H. did not have "enough background" and "no foundation's been laid" for the identification.

testified that evidence from the scene of a crime is first placed in a set of temporary lockers in the evidence bay and logged in on a property acquired as evidence form. He testified that the evidence custodian is the only one who can retrieve evidence from the lockers and log it into the evidence room.

Detective Horn testified that he used an inventory of property acquired as evidence form for the drugs from the two controlled purchases. He testified that, on the form, he listed the time he took possession of the item, the time he packaged it, and the time he put it in the evidence locker with a secure lock on it. According to Detective Horn's testimony, the suspected cocaine from the two controlled purchases were each put in sealed bags and then placed in a sealed manilla envelope. The forms referred to by Bise and Detective Horn were admitted into evidence as business records of the Sheriff's Office.

Testifying as an expert witness, Thomas Simpson, a forensic scientist with the Western Forensic Laboratory, provided general information about procedures followed by the laboratory when they receive evidence for testing for the presence of controlled substances. Specific to this case, he testified that the evidence from Washington County was received on February 7, 2019, and secured until he analyzed the substance. He first confirmed that the package contained what the accompanying paperwork from Washington County indicated it would. His inspection revealed that the substances were contained in sealed evidence bags. Simpson testified that his testing of the substances established that each was cocaine, a Schedule II controlled substance. Certificates of analysis reflecting the findings were admitted into evidence. Ward objected to the admissibility of the certificates of analysis and the part of the testimony of Simpson identifying the controlled substances, arguing that without Lloyd the chain of custody of the evidence was not established. Citing *Pope v. Commonwealth*, 60 Va. App. 486 (2012), the trial court overruled the objections.

During the trial, Ward moved to strike the evidence arguing that R.H. was an unreliable confidential informant citing contradictions in her testimony. The trial court denied the motion, stating that whether the testimony was believable was a question for the jury. The jury convicted Ward on both charges.

Before sentencing, Ward filed two motions, a motion to set aside the verdict and a motion to dismiss. The motion to set aside the verdict was based on his previously argued speedy trial violation allegation and on a new allegation that he had located a witness who would "shed a lot of light" on the credibility of R.H. The motion to dismiss was based on the previous chain of custody argument made by Ward and for the first time alleged a constitutional Confrontation Clause violation. The motion to dismiss also was based upon what was alleged to be an improper and unconstitutional identification process used, an argument not previously raised. The trial court overruled the motions. Ward was sentenced to 20 years in prison with all but one year and two months of the sentence suspended and was ordered to complete two years of probation upon his release from incarceration. Ward appeals.

ANALYSIS

I. Speedy Trial

Appellant's statutory speedy trial rights were not violated by the trial court.[16] On the original motion to dismiss, the trial court concluded that the "delays were not caused by the

---

[16] Although Ward's assignment of error alleges a violation of his constitutional right to a speedy trial, his brief is utterly void of any argument or authority supporting that allegation of error. We find that issue is waived. The only two cases he cites, *White v. Commonwealth*, 37 Va. App. 658 (2002), cited in error as 2022, and *Hudson v. Commonwealth*, 267 Va. 36 (2002), analyze an appellant's statutory right to a speedy trial. Ward's brief fails to even cite to the seminal case on the constitutional right to a speedy trial, *Barker v. Wingo*, 407 U.S. 514 (1972), and fails to make any application of the facts of this case to the factors set forth in *Barker*. As a court of review, we are "entitled to have the issues clearly defined and to be cited to pertinent authority. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Ceres Marine Terminals v. Armstrong*, 59 Va. App. 694, 708 (2012)

Commonwealth. That they were either by agreement or by actions taken by the defendant, and therefore he cannot claim a violation of speedy trial." We agree.

"[A] statutory speedy trial challenge presents a mixed question of law and fact." *Ali v. Commonwealth*, 75 Va. App. 16, 29 (2022) (alteration in original) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). "The appellate court gives deference to the trial court's factual findings but reviews legal issues *de novo*, including questions regarding the proper construction of a statute." *Id.* Code § 19.2-243 provides that the trial of an adult defendant, indicted by a grand jury, "shall be forever discharged from prosecution" if his trial is not "commenced in the circuit court within five months from the date" of his arrest. The five-month requirement "translates to 152 and a fraction days. The Commonwealth is required to commence trial within that time." *Turner v. Commonwealth*, 68 Va. App. 72, 78 (2017) (quoting *Moten v. Commonwealth*, 7 Va. App. 438, 441 (1988)).

The statute contains several exceptions, including continuances "granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion." Code § 19.2-243(4).

Statutory speedy trial may also be excused on "failure to try the accused . . . caused . . . [b]y a natural disaster." Code § 19.2-243(7). This Court has determined that the COVID-19 pandemic qualified as a "natural disaster" for tolling the statutory right to a speedy trial. *See Ali*, 75 Va. App. at 52. On March 16, 2020, in the Supreme Court's initial order declaring a judicial

---

(quoting *Fadness v. Fadness*, 52 Va. App. 833, 850 (2008)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017) (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). "Failure to adequately brief an assignment of error is considered a waiver." *Muhammad v. Commonwealth*, 269 Va. 451, 478 (2005).

emergency, the Court ordered "all deadlines" tolled for a period of 21 days, pursuant to the Court's authority under Code § 17.1-330(D). *See In re: Order Declaring a Judicial Emergency in Response to COVID-19 Emergency* at 2 (Va. Mar. 16, 2020). That tolling period was extended, uninterrupted by numerous orders entered by the Supreme Court, until June 22, 2022.

In this case, Ward was arrested on February 24, 2021, during the time period controlled by the Supreme Court orders. He was ultimately tried on August 24, 2022, sixty-three days following the lifting of the tolling period. The only continuance order effective during that time period resulted from a joint motion by Ward and by the Commonwealth to move the trial date to August 24, 2022.[17] Ward's stated reason was that his attorney was undergoing surgery; the Commonwealth's stated reason was the unavailability of the forensic scientist to testify about the drug analysis.

Even without the application of the tolling period set forth in the Supreme Court orders, Ward's statutory right to a speedy trial was not violated. Except for the period of time between his arrest on February 24, 2021, and the initial setting of the case on May 28, 2021, ninety-three days, every other continuance of the case was by agreement or due to a reason attributable to Ward. The continuance from May 28, 2021, to August 18, 2021, was at the request of Ward. Likewise, the continuance of the case from August 18, 2021, to December 3, 2021, was at the request of Ward. In each of these requests, Ward affirmatively waived his rights to a speedy trial.

Ward's objections to the continuances began in December of 2021 when his attorney was permitted to withdraw and new counsel was appointed by the trial court, just days before the scheduled jury trial. The motion to withdraw stated the reason for the request was the "complete breakdown in the attorney-client relationship" and due to Ward directing counsel to "file various

---

[17] Order entered on June 13, 2022.

- 11 -

motions that counsel, in his belief, [wa]s ethically precluded from pursuing." "Once trial counsel [is] permitted to withdraw, the trial court ha[s] no reasonable alternative other than to continue the case until other counsel [can] be appointed who [can] confer with [the defendant] and prepare his defense." *Shearer v. Commonwealth*, 9 Va. App. 394, 401-02 (1990). The trial court in this case stated the reason for the continuance of the jury trial from December 3, 2021, to January 14, 2022, was because "new [c]ounsel was just appointed."

The continuance from January 14, 2022, was "due to a pending psychological evaluation [ordered for Ward] in another [c]ourt." The continuance was granted until "the competency evaluation is returned." The trial court found that there was a delay in the return of the evaluation due to "the defendant['s] refus[al] to cooperate with said evaluation." A jury trial was set for May 23, 2022. "We do not apply the statutory time limits in a vacuum; rather, we must look to the impact of appellant's actions on our calculations." *White v. Commonwealth*, 37 Va. App. 658, 667 (2002). We previously have held that "a defendant may not invoke speedy trial protections where his conduct caused [the delay]." *Id.*

Although second counsel was permitted to withdraw from his representation of Ward and new counsel was appointed, the trial court did not automatically continue the May jury trial date. That continuance came at the request of new trial counsel. Ward waived his right to speedy trial, for that time period, specifically in the motion. The case was continued to June 17, 2022.

We hold that the speedy trial rights afforded to Ward were not violated.

## II. Certificates of Analysis

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Conley v. Commonwealth*, 74 Va. App. 658, 670 (2022) (quoting *Jones v. Commonwealth*, 38 Va. App. 231, 236 (2002)). "A trial court 'by definition abuses its discretion when it makes an error of

law.'" *Shooltz v. Shooltz*, 27 Va. App. 264, 271 (1998) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Ward's allegation of error alleges that the trial court erred in admitting into evidence the certificates of analysis of the drugs due to a failure of the Commonwealth to prove the chain of custody of the drugs for the purpose of the analysis.[18] "The determination on a chain of custody challenge lies within the trial court's broad discretion and will not be overturned on appeal absent an abuse of that discretion." *Pope*, 60 Va. App. at 511.

When the Commonwealth seeks to introduce evidence that has been seized and analyzed, the chain-of-custody rule exists "to establish that the evidence obtained by the police was the same evidence tested." *Hargrove v. Commonwealth*, 53 Va. App. 545, 553 (2009) (quoting *Brown v. Commonwealth*, 21 Va. App. 552, 555 (1996)). The Commonwealth must present evidence proving each vital link in the chain of custody for the results of chemical analysis of physical evidence items, but there is no burden to prove that all possibility of tampering has been eliminated. *Pope*, 60 Va. App. at 511. As such, "[a] court need not hear . . . from every witness who physically handled the samples for the [evidence] to be admissible." *Anderson v. Commonwealth*, 48 Va. App. 704, 717 (2006). "[I]n the 'absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their official duties.'" *Id.* at 715 (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 856-57 (1991)). The Commonwealth "need only provide 'reasonable assurance' that the evidence obtained by the

---

[18] Ward argues on brief that his right of confrontation was violated by the failure of the Commonwealth to call the person who delivered the substances to the lab. We do not address this argument because it is not alleged in his assignments of error. "The purpose of assignments of error is to 'point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points.'" *Delaune v. Commonwealth*, 76 Va. App. 372, 380 (2023) (quoting *Chesapeake Hosp. Auth. v. Commonwealth*, 262 Va. 551, 556 n.2 (2001)); *see also Commonwealth v. Delaune*, ___ Va. ___ (Dec. 14, 2023) (affirming Court of Appeals' decision). "Only assignments of error listed in the brief will be noticed by this Court." Rule 5A:20(c)(1).

police was the same evidence tested." *Id.* at 717 (quoting *Vinson v. Commonwealth*, 258 Va. 459, 469 (1999)). Thus, "[w]here there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." *Jeter v. Commonwealth*, 44 Va. App. 733, 739 (2005) (alteration in original) (quoting *Reedy v. Commonwealth*, 9 Va. App. 386, 391 (1990)).

Appellant argues that Lloyd was an essential link in the chain of evidence because she was "[t]he actual person who delivered the alleged drugs from the Sheriff's Department to the laboratory." This Court has held otherwise. In *Dotson v. Petty*, 4 Va. App. 357, 363 (1987), the courier who transported blood samples drawn for analysis from one laboratory to another one where the analysis took place not only did not testify but was unidentified. "The failure to call the courier to testify did not create a missing vital link in the chain of possession." *Id.* In *Jones v. Commonwealth*, 18 Va. App. 608, 611 (1994), the driver of the security van who transported a PERK kit from the police department to the forensic laboratory did not testify at trial. "[T]he failure to call as a witness the driver of the security van, a police officer employed by the Division, 'did not create a missing vital link in the chain of possession.'" *Id.* (quoting *Dotson*, 4 Va. App. at 363). In both *Dotson* and *Jones*, we held that the evidence of the procedures followed by the departments and laboratories "negated any substantial probability that the [evidence] had been altered, substituted, or tampered with during transit, thereby sufficiently accounting for that link." *Id.* (alteration in original).

That same evidence was presented in the case now before us. After each controlled purchase, Detective Horn received from R.H. a white, powdery substance in a clear plastic bag that had been tied up. Detective Horn then submitted the substance to the evidence locker following each purchase. He explained that the suspected cocaine from the two controlled purchases were each put in a sealed bag and then placed in a sealed manilla envelope. Detective

Horn also testified that Lloyd, a former evidence technician, submitted the substances to the Department of Forensic Science each time.

Using business records maintained by the Sheriff's Office, then-current evidence custodian Bise testified that no one accessed the evidence, besides Detective Horn, Lloyd, and the lab. Bise's testimony also clearly explained how evidence from the scene of a crime is handled in the normal course of business.

Simpson provided testimony establishing that the evidence submitted by Detective Horn was received by the laboratory in sealed bags. Using records and logs from the lab, he testified when the items were received, how they were stored, and what identifying numbers they bore. He testified that what he received and tested were what were described on the request for analysis prepared by Detective Horn.

Given the testimony of Detective Horn, Bise, and Simpson, the trial court "need not hear . . . from every witness who physically handled the samples for the [evidence] to be admissible." *Anderson*, 48 Va. App. at 717. Given the steps taken here, the prosecution provided "'reasonable assurance' that the evidence obtained by the police was the same evidence tested." *Id.* (quoting *Vinson*, 258 Va. at 469).

### III. Identification Process

Our consideration of Ward's allegation that the trial court erred in failing to dismiss the case due to a flawed identification process used by law enforcement is procedurally barred for two reasons. First, in violation of Rule 5A:18, Ward failed to make a timely objection to R.H.'s identification of him on constitutional grounds. Second, in violation of Rule 5A:20(e), Ward, in his opening brief, failed to specifically cite principles of law and authorities supporting his argument.

As to the first violation, prior to R.H. first identifying Ward as the person who sold her drugs, Ward objected stating, "I don't think she has enough background and no foundation's been laid, but that's my objection." He never even mentioned any constitutional violation nor any impermissibly suggestive photo lineup. In fact, later in the trial when Ward does object to any reference to the statement made by R.H. to Detective Horn about the identification of Ward from a single photograph, the trial judge sustained his objection. Further, the rather vague reference to a constitutional violation is not made until just before the sentencing hearing.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). We "will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue." *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc) (citing *Floyd v. Commonwealth*, 219 Va. 575, 584 (1978)). We recently have held, citing long-established precedent, that "Rule 5A:18 applies to bar even constitutional claims." *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)).

As to the second, Ward failed to even set forth in his brief what constitutional provisions were violated. His assignment of error alleges that "[t]he trial court erred in refusing to dismiss the charges in this matter due to a constitutional violation of due process and other constitutional issues." His brief "refer[s] the Court" to three cases from the United States Supreme Court without any analysis of how those cases apply to the facts of the case now before this Court. He leads us to speculate how the authority relates to his argument.

This Court has found an allegation of error waived when the appellant fails to explain, develop, or support an argument. *See Epps v. Commonwealth*, 59 Va. App. 71, 76 n.6 (2011). Further, this Court has held that "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (quoting *Sneed v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010)). Leaving this Court to "speculate as to how [appellant]'s meager authority relates to his argument, the need for such guesswork on our part necessarily means [appellant] has not complied with the rule." *Sfreddo v. Sfreddo*, 59 Va. App. 471, 494 (2012).

Because Ward did not comply with Rules 5A:18 and 5A:20, we find that his allegation of error regarding the identification process is waived.

IV. Sufficiency of Evidence

"On appeal, we view the record in the light most favorable to the Commonwealth because it was the prevailing party below." *Delp v. Commonwealth*, 72 Va. App. 227, 230 (2020). "Viewing the record through this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Commonwealth v. Cady*, 300 Va. 325, 329 (2021) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

The assignment of error on sufficiency of the evidenced advanced by Ward boils down to his argument that R.H. was not a credible witness. Ward calls her story "totally incredulous." He says that "the paid informant is not worthy of belief."

When sufficiency of the evidence is challenged, we determine "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cady*,

300 Va. at 329 (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder," and will only be disturbed by this Court if the witness's testimony is inherently incredible as a matter of law. *Perkins*, 295 Va. at 328 (emphasis omitted) (quoting *Elliott v. Commonwealth*, 277 Va. 457, 462 (2009)). "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Id.* (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

In the case before the Court, R.H.'s involvement in the drug transactions was monitored by an officer with the Sheriff's Office. She was thoroughly searched prior to each transaction. She was provided with a video camera to record the transactions. She was observed by law enforcement during the transactions. Law enforcement, before the jury, corroborated her account of the transactions and her identification of Ward. R.H.'s testimony was not inherently incredible as a matter of law. Her testimony and the testimony of the other witnesses established sufficient evidence supporting the jury's verdict. This Court affirms the trial court's denial of the motion to strike.

## CONCLUSION

For the reasons stated above, we affirm the lower court's rulings on all issues.

*Affirmed.*